NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0744n.06
Filed: December 4, 2008

No. 07-2258

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

PATRICIA LAHAR,                          )
                                         )
        Plaintiff-Appellant,             )
                                         )
v.                                       )   ON APPEAL FROM THE UNITED
                                         )   STATES DISTRICT COURT FOR THE
OAKLAND COUNTY, a corporate body,        )   EASTERN DISTRICT OF MICHIGAN
                                         )
        Defendant-Appellee.              )
                                         )

Before: BATCHELDER, CLAY and SUTTON, Circuit Judges.

PER CURIAM. Patricia Lahar challenges the district court's grant of summary judgment in favor of Oakland County on her Age Discrimination in Employment Act (ADEA) retaliation claim and her parallel state-law retaliation claim. Judge Clay believes Lahar has failed to demonstrate a genuine issue of fact with respect to both a materially adverse action and causation, whereas Judges Batchelder and Sutton would not reach the issue of whether a materially adverse action occurred and thus do not join Part II.B.1. Because we all find an absence of causation, we affirm.

I.

Since 1986, Lahar has worked as a senior administrator for Oakland County Children's Village, a residence for delinquent youths, victims of abuse or neglect and those without family members who can care for them. In January 2003, Lahar, then 54, applied for the vacant position of Manager, the highest position at the facility. Joanna Overall, a Children's Village employee, then roughly 44, received the position instead.

In response, Lahar filed an age-discrimination lawsuit in state court against Oakland County in April 2003. The state trial court granted the county's motion for summary disposition, and the court of appeals affirmed.

Five months after she filed that lawsuit, Lahar claims that Overall subjected her to "unwarranted scrutiny and discipline," including one oral and two written reprimands. Br. at 7. She also claims that Overall reduced her job responsibilities and lowered her performance evaluations during the next three years. In 2005, Lahar filed a second lawsuit against Oakland County, this time in federal court, alleging that the conduct amounted to unlawful retaliation under the ADEA, 29 U.S.C. § 623(d), and under Michigan's Elliott-Larsen Civil Rights Act, Mich. Comp. L. § 37.2701(a). The district court granted the county's motion for summary judgment on both claims, concluding that Lahar failed as a matter of law to establish an adverse employment action caused by her protected conduct. *Lahar v. Oakland County*, No. 05-72920, 2007 WL 2752350, at *11–12 (E.D. Mich. Sept. 21, 2007). Lahar appeals.

II.

A.

The district court, as an initial matter, did not err when it refused to consider new factual allegations and legal arguments that Lahar raised in an eleventh-hour affidavit. Lahar submitted the affidavit "without the permission of the Court, long after briefing was complete, and without allowing Defendant adequate opportunity to respond or even review it prior to the [summary-judgment] hearing." *Lahar*, 2007 WL 2752350, at *2. As a result, the court declined to consider new allegations and legal theories that "could have been timely raised in Plaintiff's Response brief." *Id.*

The district court permissibly exercised its discretion in declining to consider Lahar's new contentions. *See Miller v. Lorain County Bd. of Elections*, 141 F.3d 252, 259 (6th Cir. 1998). Lahar "failed to offer a reasonable explanation for her tardiness," *Lahar*, 2007 WL 2752350, at *2, and trial-level litigation would come to a standstill, or at least become exceedingly inefficient, if parties could raise new arguments at that stage in the case. Because a litigant generally forfeits an argument that she fails to raise in a timely manner, *see Hunter v. United States*, 160 F.3d 1109, 1113 (6th Cir. 1998), and because Lahar did not offer good cause for the late filing, the district court permissibly rejected the new legal arguments raised in the affidavit.

B.

Lahar next challenges the district court's conclusion that her retaliation claims fail as a matter of law. Under the ADEA, it is "unlawful for an employer to discriminate against any of his employees . . . because [the employee] has . . . participated in . . . litigation under this chapter." 29 U.S.C. § 623(d). In the absence of "direct evidence" of retaliation, the claim proceeds under the *McDonnell Douglas* framework. The plaintiff initially must present "a prima facie case of retaliation by showing that (1) he engaged in protected activity, (2) [which] was known to the defendant, (3) [who] thereafter took an employment action adverse to the plaintiff" (4) because of the protected activity. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008). If the employee makes this showing, the employer must offer "evidence of a legitimate, nondiscriminatory reason for its actions," and if the employer does so, the burden shifts back to the plaintiff, who must show that "the legitimate reason offered by the defendant was . . . a pretext designed to mask retaliation." *Id.* Michigan law applies this same approach to claims filed under the Elliott-Larsen Civil Rights Act. *See Garg v. Macomb County Cmty. Mental Health Servs.*, 696 N.W.2d 646, 653, 656 (Mich. 2005).

The district court rejected Lahar's claims on two independent grounds: (1) that she failed to show that the county had taken a materially adverse action against her and (2) that the employer's conduct, even if it amounted to an adverse action, was not caused by her age-discrimination suit. *Lahar*, 2007 WL 2752350, at *11–12. We give fresh review to these determinations and in doing so must "view the evidence and draw all reasonable inferences in favor of . . . the non-moving party"—here Lahar. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521 (6th Cir. 2008).

1.

An action is "materially adverse," the Supreme Court has explained, when it would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *See Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). "[N]ormally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id.* The standard is the "reactions of a *reasonable* employee," not the plaintiff herself, in view of "the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings." *Id*. at 68–69.

In attempting to satisfy this requirement, Lahar points to lowered performance evaluations that followed the filing of her state-court lawsuit. *Compare* JA 618 (December 2002 evaluation, marked "outstanding" in all categories) *with* JA 623 (April 2004 evaluation with one "outstanding," four "above average," one "average" and one "below average" marks); *see also* JA 624–25 (2005 and 2006 evaluations were similar to 2004 evaluation). She also relies on three reprimands for misconduct: (1) in September 2003 for "fail[ing] to involve [Overall] in a decision involving another department" after repeated instructions to do so, JA 131; (2) in February 2005 for failing "to follow the chain of command," failing "to include supervisory staff in business that involves their staff" and failing "to inform [Overall]" before working uncompensated overtime, JA 135; and (3)

in May 2005 for engaging in insubordination by again working unpaid overtime without prior approval.

We have previously held that lowered evaluations "could . . . dissuade[] a reasonable worker from making . . . a charge of discrimination" *if* they "significantly impact an employee's wages or professional advancement." *Halfacre v. Home Depot, USA, Inc.*, 221 F. App'x 424, 432, 433 (6th Cir. 2007) (internal quotation marks omitted) (alteration in original). And we can assume that the same would be true for reprimands, at least for purposes of resolving this case. The problem for Lahar is that she has failed to show that her lowered evaluations or reprimands affected her wages or prospects for advancement. Before she filed her state-court lawsuit, Lahar occupied the second-highest rung on the Children's Village employment ladder, she was at the top step of her salary grade, and her compensation ranked in the top 2.2% of all county employees. Her state-court lawsuit stemmed from her failure to get the one job within Children's Village that would have allowed her to advance and to make more money. Whatever else the county did in alleged response to this lawsuit, it did not reduce her pay or her title. Under these circumstances, it is not surprising that Lahar has failed to show that these reprimands and lowered evaluations failed to reduce, or are likely to reduce, her compensation or further advancement. She, indeed, offers no evidence to support any such possibility.

Lahar next points to decreased job responsibilities, all allegedly prompted by the filing of her state-court lawsuit and all occurring during the three years after she filed the lawsuit. They include the following: Overall did not ask her to serve as a representative for Children's Village at various conferences; Overall prevented her from contacting the State's licensing consultant without prior permission; Overall prohibited her from observing the entire employee arbitration process in cases involving her subordinates; someone (probably Overall) excluded her from the hiring process;

Overall required her to seek permission before working unpaid overtime; Overall would not allow her "to assess and adjust the programming within the intake section as [she] deem[ed] necessary," to transfer residents between buildings as she wished, to implement special needs programming, to direct clinical supervisors or to investigate staff wrongdoing, JA 595; and Overall prevented her from meeting with staff members outside the presence of their supervisors.

All considered, these slights do not rise to the level of a *materially* adverse employment action because they would not have influenced a reasonable employee's decisionmaking process. No doubt, a change in job duties—even one with no effect on pay—may be a materially adverse action if the altered job duties would be considered "less desirable" by a reasonable employee. *See Burlington N.*, 548 U.S. at 70–71. Transferring an employee from forklift-operator duties to track laborer duties, for example, amounted to a materially adverse action in *Burlington Northern* because the evidence showed that the former job was more "prestig[ious]" than the latter, because the latter job was "by all accounts more arduous and dirtier" and because there was "considerable evidence" that the forklift position "was objectively considered a better job and [that] the male employees resented [the plaintiff] for occupying it." *Id.* (internal quotation marks omitted). Lahar offers no similar evidence. She was not reassigned after she filed the lawsuit, and she was not asked to do more work, or for that matter "more arduous" work, within the county. If anything material changed after the lawsuit was filed, it is that the company asked less rather than more of her. In maintaining that she suffered "deep psychological harm" from this series of administrative slights, *see* Br. at 26 n.13, she answers the wrong question. The issue is not whether she was subjectively hurt by this treatment; it is whether evidence indicates that a reasonable employee in her position would react similarly if treated the same way.

*Michael v. Caterpillar Financial Services Corp.*, 496 F.3d 584 (6th Cir. 2007), does not fill this gap in her case. There, management ordered an employee to take two days of paid

administrative leave, followed by a "90-day performance plan," during which managers scrutinized her actions. *Id.* at 591. The plan included weekly reviews of her progress, as well as requirements that she "notify[] management if she would not be in the office, improv[e] her timely attendance at business meetings, refrain[] from treating her staff as personal assistants, and refrain[] from contacting her staff outside of normal business hours." *Id.* at 592. Overall's minor restrictions on Lahar's administrative duties did not rise to this level.

Even if all of these actions—the administrative slights, the reprimands, the lowered evaluations—do not rise to the level of an adverse-employment action when considered individually, Lahar maintains that they suffice when considered together. The county concedes that a claimant may aggregate claims of mistreatment in deciding whether retaliation occurred, and thus for purposes of resolving this case we will assume she may. Resp. Br. at 45; *see Howard v. Bd. of Educ. of Memphis City Schs.*, 70 F. App'x 272, 283 (6th Cir. 2003) ("While many of these incidents do not rise to the level of an adverse employment action, the incidents, in toto, might arguably give rise to actionable retaliatory harassment."); *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998) (considering the "totality of the alleged reprisals" in deciding whether an adverse-employment action occurred).

Even when considered in the aggregate, however, Lahar's claims still come up short. Keep in mind that these actions did not occur all at once; they were spread out over three years. A "reasonable employee" is far less likely to be deterred by these kinds of actions when spread out over several years rather than condensed in the days or months following the protected activity. *Cf. Wideman*, 141 F.3d at 1455–56 (concluding that numerous small actions, all occurring within a two-month period, constituted materially adverse action).

2.

In addition to this defect in her claim, Lahar has failed to establish a material dispute of fact that the county took these actions *because of* her state-court lawsuit. In attempting to show otherwise, she argues that the temporal proximity between her state-court lawsuit and these adverse actions by itself establishes causation. But temporal proximity by itself rarely will establish sufficient evidence to create a triable issue of fact over causation. *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002) (collecting cases); *see Mickey*, 516 F.3d at 525. Even in the rare case where it does suffice, the gap in time between the protected activity and the alleged retaliation must be brief. *See Mickey*, 516 F.3d at 525 ("In those limited number of cases—like the one at bar—where an employer fires an employee *immediately* after learning of a protected activity, we can infer a causal connection between the two actions, even if Mickey had not presented other evidence of retaliation.") (emphasis added).

Here, the first of the alleged retaliatory actions against Lahar was the oral reprimand in September 2003 for "fail[ing] to involve [Overall] in a decision involving another department." JA 131. Although the memorandum documenting the reprimand noted that Overall had "discussed the need for [Lahar] to inform [her] of non-routine issues as they arise" on several occasions in May 2003, the actual reprimand did not occur until September 2003, shortly after Lahar "again . . . contact[ed] an Administrator of the Circuit Court, Family Division" without prior approval. *Id.* This was five months after Lahar filed the lawsuit in April 2003. As the district court correctly held, a five-month gap in time does not by itself suffice to get to a jury on causation. *See Cooper v. City of N. Olmstead*, 795 F.2d 1265, 1272–73 (6th Cir. 1986) (holding that a *four-month* gap between protected conduct and alleged retaliation could not sustain a causation inference, absent other evidence of retaliation).

It is no answer to say that the county based the September 2003 reprimand in part on events that occurred in May of the same year. For one, the employer's restraint in not disciplining the employee closer in time to the protected conduct creates an inference of non-retaliation, not one of retaliation. An employer bent on retaliating against an employee is more likely to act as soon as the employee gives it the chance, not wait until a second or third problem arises—as happened in this case. For another, disciplinary actions based on all but the most egregious conduct generally will turn on incidents that occurred over a period of time, not just on the date on which the discipline is imposed. In *Cooper*, for instance, the plaintiff's termination was preceded by a number of citations for poor performance, including two within a month of the protected conduct, but the court nevertheless considered the lapse in time between the protected conduct and the adverse action to be the entire four months. 795 F.2d at 1266–67, 1272–73. It bears adding that Lahar does not maintain that the May events were themselves an adverse employment action or even a component of one.

Lahar adds that more than temporal proximity supports her causation argument, pointing to alleged "disparate treatment" between her and other employees. Br. at 33. She notes that another supervisor, Peter Balzerini, was not excluded from the hiring process, prevented from meeting with the State licensing consultant or denied the authority to transfer residents. But because Lahar failed to present this theory of causation to the district court in her summary-judgment papers, she has forfeited it, *Enertech Elec., Inc. v. Mahoning County Comm'rs*, 85 F.3d 257, 261 (6th Cir. 1996), as the district court properly found, *Lahar*, 2007 WL 2752350, at *2 (finding that arguments not made in initial summary judgment response were forfeited).

Lahar further argues that, because Overall complained about her from time to time, that itself establishes causation. But here, too, she failed to raise this theory below and so has forfeited it.

III.

For these reasons, we affirm.