RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0362p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

PEGGY BLIZZARD,

       *Plaintiff-Appellant,*

    *v.*

MARION TECHNICAL COLLEGE; JEFFREY
NUTTER,

       *Defendants-Appellees.*

No. 11-3441

_____

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 3:09-cv-1643—James G. Carr, District Judge.

Argued: May 31, 2012

Decided and Filed: October 19, 2012

Before: SILER and WHITE, Circuit Judges; REEVES, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Thomas A. Sobecki, Toledo, Ohio, for Appellant. Drew C. Piersall, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellees. **ON BRIEF:** Thomas A. Sobecki, Toledo, Ohio, for Appellant. Drew C. Piersall, Julie B. Smith, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellees.

_____

## OPINION

_____

DANNY C. REEVES, District Judge. This case arises from Appellant Peggy Blizzard's termination from her employment with Appellee Marion Technical College. Blizzard filed suit against her supervisor and the college asserting claims for age

_____

[*] The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

discrimination and retaliation, as well as intentional infliction of emotional distress and breach of public policy. The district court granted summary judgment in favor of the defendants on all claims. Blizzard now appeals the dismissal of her age discrimination and retaliation claims. For the reasons described below, we affirm the judgment of the district court.

## I.

Blizzard was born on January 18, 1951. In 1992, she was hired as a part-time Associate Accounts Payable Clerk in the Business Office at Marion Technical College ("MTC"). Blizzard was promoted to Accounts Payable Clerk 1 in 1996. She was terminated from that position in April 2008, at 57 years of age.

Blizzard's supervisor, Jeffrey Nutter, began as MTC's Controller on April 29, 2001. In this position, he oversaw the MTC business office and its staff: Blizzard, Betty MacNail, and Jean Thomas (who was born on July 14, 1964). Nutter's superiors at MTC were Dr. Richard Bryson, President, and Doug Boyer, Vice President of Financial and Administrative Services.[1] In 2005, MTC began installing a new management information system on its campus. The implementation of the new software was overseen by Nutter and Joy Moore, Director of Management Information Systems. Training sessions for the new technology began in March 2006. Although the parties disagree as to Blizzard's level of understanding of the software, it is undisputed that she experienced difficulty with the system. It is at this point that the parties diverge regarding the facts surrounding Blizzard's employment difficulties and her subsequent termination.

MTC asserts that Blizzard was resistant to the new software and fell behind in learning to use it. According to MTC, Blizzard's subsequent issues at work arose from her difficulties adapting to the new technology. Blizzard, on the other hand, contends that her problems stemmed from Nutter's treatment of her. She alleges that Nutter gave

---

[1]For purposes of this action, other relevant MTC employees include: Rick Heisel, Payroll Manager; Dan Hauenstein, Director of Human Resources; Teresa Parker, MTC's Civil Rights Compliance Officer; and Linda King, Human Resources Specialist.

Thomas special treatment. Specifically, Blizzard maintains that Nutter was more lenient with Thomas regarding infractions such as taking long breaks, talking on her cell phone, and socializing in the office. In addition, Blizzard alleges that Nutter gave Thomas more opportunities for training on the new software programs and sometimes required Blizzard to work extra hours so that Thomas could attend training sessions.

In 2006 and 2007, Blizzard made several oral complaints to various persons at MTC. Blizzard complained to Parker on May 25, 2006 that she was working longer hours than Thomas. Several days later, she told Hauenstein that she was treated differently than younger employees because they were getting away with bad behavior at work. Blizzard also told Hauenstein that she felt Nutter treated her in an emotionally abusive and intimidating manner, while younger employees were treated with respect and kindness. In December 2007, Blizzard told King that she was considering filing a written grievance.

In June 2006, Nutter evaluated Blizzard's work performance, rating her as falling below expectations in several areas including attitude, judgment, team effort/leadership, and technical skills. Blizzard submitted a response to the evaluation, disputing Nutter's appraisal of her work. However, according to MTC, Blizzard's poor performance continued after the evaluation. On April 19, 2008, Nutter wrote a memo entitled "Conduct of Peggy Blizzard," which documented his reasons for recommending her termination. Boyer approved the decision to terminate Blizzard's employment and Hauenstein dismissed her three days after Nutter's memo.

After Blizzard's dismissal, Thomas was assigned to perform the majority of Blizzard's job responsibilities in addition to her own. In August 2008, MTC hired 28-year-old Kristina Walters as a cashier. Three months later, MTC hired Janice Teeter to perform the Accounts Payable Clerk duties. Teeter was 51 years old when she accepted the position. Although she began in a temporary capacity, Teeter was hired as a full-time employee on July 20, 2009.

Blizzard filed a charge with the Equal Employment Opportunity Commission ("EEOC") on June 30, 2008, claiming retaliation, age discrimination, and sex

discrimination.  On July 16, 2009, she filed a complaint against MTC and Nutter[2] in the Northern District of Ohio, asserting claims for age discrimination and retaliation under the federal Age Discrimination Enforcement Act ("ADEA") and Ohio law, as well as claims for "Breach of Policy" and intentional infliction of emotional distress.  MTC moved for summary judgment on all of the claims against it on July 8, 2010.  On March 30, 2011, the district court granted MTC's motion and entered judgment in favor of the defendants.  Blizzard timely appealed.

## II.

This court reviews a district court's grant of summary judgment de novo.  *ACLU of Ky. v. Grayson Cnty.*, 591 F.3d 837, 843 (6th Cir. 2010); *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001).  Summary judgment is required when the moving party shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see* Fed. R. Civ. P. 56(c)(1).  The party moving for summary judgment bears the burden of showing conclusively that no genuine issue of material fact exists. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008).  Once a moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  Reviewing the facts in the light most favorable to the nonmoving party, the court must ultimately determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Vill. of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373, 377 (6th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see Matsushita*, 475 U.S. at 586.

---

[2]The court will refer to the defendants collectively as MTC.

### A.     Age Discrimination Claims

The ADEA prohibits an employer from discharging an individual "because of such individual's age."  29 U.S.C. § 623(a)(1).  Section 4112.14 of the Ohio Revised Code provides that no employer shall "discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job."  Ohio Rev. Code Ann. § 4112.14(A).  Age discrimination claims brought under the Ohio statute are "analyzed under the same standards as federal claims brought under the [ADEA]." *Wharton v. Gorman-Rupp Co.*, 309 F. App'x 990, 995 (6th Cir. 2009) (citing *Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir. 2005)).

The burden of persuasion is on the plaintiff to show that "age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009).  A plaintiff "may establish a violation of the ADEA by either direct or circumstantial evidence." *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). Where, as here, the plaintiff fails to present direct evidence of age discrimination, the claim is analyzed using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under *McDonnell Douglas* and its progeny, once the plaintiff succeeds in making out a prima facie case of age discrimination, the defendant must "articulate some legitimate, nondiscriminatory reason" for the termination.  *Id.* at 802.  "If the defendant meets this burden, then the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is a pretext." *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 615 (6th Cir. 2003).

### 1.     Prima Facie Case

To establish a prima facie case of age discrimination, a plaintiff must show: "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). An allegation that the plaintiff was replaced by a younger individual supports an inference of

discrimination only if the difference in age is significant. *See Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003) (explaining that an inference of discriminatory intent cannot be "drawn from the replacement of one worker with another worker insignificantly younger" (internal quotation marks omitted)).

Here, MTC argues that Blizzard failed to meet her burden of establishing a prima facie case of age discrimination. Although it concedes that she has presented evidence to support the first three elements of her claim, MTC maintains that Blizzard "cannot establish the fourth prong of her prima facie case as her replacement was not significantly younger." Blizzard, on the other hand, asks this court to affirm the district court's conclusion that the age difference between Blizzard and her replacement was significant.

Although Blizzard argues that Thomas replaced her, the district court correctly found that Janice Teeter (born on July 13, 1957) was Blizzard's replacement.[3] Thomas assumed many of Blizzard's job duties after the termination. However, an employee's assumption of a terminated co-worker's job duties does not constitute replacement for purposes of an ADEA claim. *Id.* ("A person is not replaced when . . . the work is redistributed among other existing employees already performing related work." (internal quotation marks omitted)). Rather, a "'person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.'" *Id.* (quoting *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990)). Although Thomas assumed Blizzard's responsibilities temporarily, Teeter was hired to fill the position that Blizzard had previously occupied. Teeter, who is six and a half years younger than Blizzard, was Blizzard's replacement. This conclusion is not undermined by the fact that there was a lapse in time between Blizzard's termination date and Teeter's hiring date. *See id.* at 334, 335-36 (finding that plaintiff's replacement was the person who was hired "[e]ventually," rather than the co-worker who assumed job duties initially).

---

[3]Blizzard argued before the district court that Walters was her replacement, but the court rejected that assertion because working at the cashier window "did not make up a substantial portion of Blizzard's duties." Blizzard does not challenge this conclusion on appeal.

This court established a bright-line rule in *Grosjean* when it held that "in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant." *Id.* at 340. However, while an age difference of ten or more years is generally considered significant, *id.* at 336, replacement of the employee by a person who is six to ten years her junior must be considered on a case-by-case basis. *Cf. id.* at 340 (explaining that bright-line rule "does not encroach on our precedent holding that eight years can be a significant age difference"). Thus, *Grosjean* essentially created a zone of discretion in age-discrimination cases involving replacement by a person who is between six and ten years younger than the plaintiff. Here, the district court concluded that, although the six-and-a-half year age difference between Blizzard and Teeter "is perhaps not the best evidence to create an inference of age discrimination," it was nonetheless sufficient to create an issue of material fact at the summary judgment stage. The district court's decision was a reasonable exercise of its discretion under *Grosjean*.

## 2.       Pretext

Because Blizzard established a prima facie case of age discrimination, the burden shifted to MTC to articulate a nondiscriminatory reason for dismissing Blizzard. The district court determined that MTC met this burden, and found the following to be legitimate business reasons for the adverse employment decision:

> Blizzard failed to follow proper procedures in using the new software systems, which resulted in unmanageable vendor lists, duplicate payments to vendors and errors in processing accounts payable receipts. She was unaccountably absent from her work area, she failed to perform necessary functions of her job and exhibited a general unwillingness to cooperate with other employees in the business office or to attend meetings and training on the new software systems. She resisted changes to what she perceived to be the duties of the Accounts Payable Clerk job.

On appeal, Blizzard argues that the legitimate business reasons described by the district court are not the same as those reasons relied upon by MTC. She asserts that her letter of termination is the only proper statement of the reasons behind her termination.

However, a formal termination letter is not the only evidence a court may use to determine the reasons for an employee's dismissal. *Cf. Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350-51 (6th Cir. 1998) (looking to employer's memorandum in support of its motion for summary judgment for the "legitimate business reason" for the decision to terminate the employee). And, as MTC points out, the district court's findings were supported by the 2006 performance evaluation and the April 19, 2008 memorandum from Nutter to Hauenstein. As a result, the district court correctly identified legitimate, nondiscriminatory reasons for MTC's termination of Blizzard's employment.

When an employer offers nondiscriminatory reasons for an adverse employment action, the burden shifts back to the employee to prove that the stated reason for her termination is pretextual. At this stage, the plaintiff has the burden to produce "sufficient evidence from which a jury could reasonably reject [the employer's] explanation of why it fired her." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). She can accomplish this by proving "'(1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate [her discharge], or (3) that they were *insufficient* to motivate discharge.'" *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012) (emphasis in original) (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). The three-part test need not be applied rigidly. Rather, "[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Chen*, 580 F.3d at 400 n.4.

Blizzard argues that MTC's proffered reasons have no basis in fact. She contends that her colleagues, such as Axline, Rodman, and Langdon, "spoke glowingly of her work." However, these opinions were formed from sporadic interactions with Blizzard. For instance, although Axline testified that she "never had any problem" with Blizzard's performance, she also indicated that in their professional capacities, their paths crossed only once or twice per month. Similarly, Rodman's assertion that Blizzard was "conscientious in assisting" her with billing problems was based on monthly communications. That coworkers who interacted with her infrequently found nothing

in Blizzard's work to complain about is not enough to show that MTC's proffered reasons have no basis in fact. Moreover, these opinions do not rebut MTC's assertion that Blizzard exhibited a general unwillingness to cooperate and work with other employees in the College's Business Office, because Axline, Rodman, and Langdon all worked in different departments within MTC.

Blizzard also relies on a letter of reference written by Heisel on August 4, 2006, which described Blizzard as "hard working," "dedicated," and "productive." Unlike Axline, Rodman, and Langdon, Heisel did work in the Business Office alongside Blizzard. However, Heisel left the Business Office in 2005, so his recommendation letter was based on an opinion of Blizzard's work formed over a year before the implementation of the new software that precipitated most of her performance issues. In short, this evidence does not establish that MTC's stated reasons were pretext for a discriminatory decision.

Finally, Blizzard argues that *Hamilton v. General Electric Co.*, 556 F.3d 428 (6th Cir. 2009), compels us to reverse the district court's decision. In *Hamilton*, the employee alleged that his employer, GE, waited for a "legal, legitimate reason to fortuitously materialize," and then used that reason to cover up its true motivation for firing him. *Id.* at 436 (internal quotation marks omitted). The court concluded that the employee had raised a question of fact sufficient to defeat a motion for summary judgment because he "contested the facts underlying his termination" rather than simply denying the employer's stated reasons for his dismissal. *Id.* at 438. Here, Blizzard submits her own deposition testimony and affidavit as proof that MTC's reasons had no basis in fact. She asserts that the district court improperly ignored her accounts because she did not "merely offer her own opposing opinion of her qualifications, but challenged the factual basis of the accusations." We agree that, under *Hamilton*, the district court should have "give[n] credence to the 'evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached.'" *Id.* at 437 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000)).

The district court erred when it failed to consider Blizzard's opinion testimony contesting the facts behind MTC's stated reasons for firing her.

However, even if Blizzard did provide sufficient evidence to create a genuine issue of material fact regarding the falsity of MTC's proffered reasons, MTC would still be entitled to summary judgment. This court has adopted a "modified honest belief" rule, which provides that "'for an employer to avoid a finding that its claimed nondiscriminatory reason was pretextual, the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made.'" *Escher v. BWXT Y-12, LLC*, 627 F.3d 1020, 1030 (6th Cir. 2010) (quoting *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 708 (6th Cir. 2006)). The employee, in turn, "must be afforded the opportunity to produce evidence to the contrary, such as an error on the part of the employer that is 'too obvious to be unintentional.'" *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 286 (6th Cir. 2012) (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)). To overcome the employer's invocation of the honest belief rule, the employee "must allege more than a dispute over the facts upon which [the] discharge was based. He must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001).

Blizzard asserts that MTC failed to investigate the charges against her to determine their veracity. However, it is not necessary "that the decisional process used by the employer be optimal or that it left no stone unturned." *Smith*, 155 F.3d at 807. Blizzard has failed to produce evidence demonstrating that MTC's reliance on the facts before it at the time of the decision to dismiss her was unreasonable. Lacking such proof, Blizzard's "disagreement with [MTC's] honest business judgment regarding [her] work does not create sufficient evidence of pretext in the face of the substantial evidence that [MTC] had a reasonable basis to be dissatisfied." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116 (6th Cir. 2001). MTC is entitled to the protections of the honest belief rule because it has shown that it made a "reasonably

informed and considered decision" to terminate Blizzard's employment. *Smith*, 155 F.3d at 807. Thus, Blizzard has failed to establish pretext on the grounds that MTC's "proffered reasons had no basis in fact." *Chattman*, 686 F.3d at 349 (emphasis omitted).

Blizzard also argues that MTC's articulated reasons for her dismissal were insufficient to actually motivate her discharge. To establish the insufficiency of MTC's proffered reasons, Blizzard must show by a preponderance of the evidence that "other employees, particularly employees not in the protected class, were not fired even though they were engaged in substantially identical conduct to that which the employer contends motivated its discharge of [Blizzard]."[4] *Manzer*, 29 F.3d at 1084. Blizzard asserts that Thomas had the same performance problems, but was not punished or terminated for them.[5] However, Thomas's mistakes were not *substantially* identical to those made by Blizzard. *Id.* For instance, Blizzard testified at her deposition that Thomas input vendor information using four lines of text on the address lines instead of three lines, an error that resulted in checks being returned to MTC. Blizzard, on the other hand, made mistakes that resulted in double payments to vendors. These are not acts of comparable seriousness. *See Ercegovich*, 154 F.3d at 352 (describing similarly situated employees as individuals who "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it" (internal quotation marks omitted)). Blizzard has failed to establish that Thomas was "similarly situated with respect to the severity and frequency of [her] performance errors," *Majewski*, 274 F.3d at 1116, and the district court was correct in concluding that "Thomas and Blizzard did not make the same mistakes at work."

---

[4]Thomas was 44 years old in 2008 and was in the protected class when Blizzard was discharged.

[5]Blizzard also alleges that Thomas "took excessively long lunch hours and trips to the bank, and . . . excessively socialized." However, there is evidence in the record that Thomas was disciplined for some of these infractions.

Finally, Blizzard asserts that certain age-related comments made by Nutter constitute circumstantial evidence of pretext.**6**  Blizzard points to three incidents to support her assertion: (1) Nutter said to her in the fall of 2006: "Most of the people here are the old people like you" [*See* R. 66 at 23]; (2) Nutter commented that another MTC employee, Joe Liles, had "been in his job too long"; and (3) Nutter said that Boyer was "lazy and didn't work and wasn't doing his job and had been there too long."  It is true that "discriminatory remarks, even by a nondecisionmaker, can serve as probative evidence of pretext."  *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 393 (6th Cir. 2009).  However, the district court correctly noted that the second and third statements are ambiguous because they could just as easily refer to tenure.  Moreover, because the discriminatory remarks were unrelated to the decision to dismiss Blizzard from her employment, they do not constitute evidence of discrimination.  *See Geiger*, 579 F.3d at 621 ("'Statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden . . . of demonstrating animus.'" (alterations in original) (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998))).  Therefore, Nutter's comments do not establish pretext.

Although Blizzard has established a prima facie case of age discrimination, she has failed to show that MTC's proffered reasons for her termination were pretextual.  Therefore, the district court's grant of summary judgment regarding Blizzard's age discrimination claim will be affirmed.

### B.    Retaliation Claims

The ADEA prohibits employers from retaliating against an employee for opposing or reporting age discrimination.  29 U.S.C. § 623(d).  Similarly, Ohio law provides that it is unlawful for "any person to discriminate in any manner against any

---

**6**This argument is, essentially, that MTC's "proffered reasons did not *actually* motivate" her discharge. *Chattman*, 686 F.3d at 349.  This method of proving pretext "requires that the plaintiff 'admit[] the factual basis underlying the employer's proffered explanation and further admit[] that such conduct could motivate dismissal.'" *Id.* (alterations in original).  This is problematic because, as discussed above, Blizzard disputes the factual basis for MTC's reasons for firing her.

other person because that person has opposed any unlawful discriminatory practice." Ohio Rev. Code Ann. § 4112.02(I).  To establish a prima facie case of retaliation under either federal or Ohio law, a plaintiff must show that "(1) she engaged in a protected activity, (2) the defending party was aware that the [plaintiff] had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and [the] adverse action."  *Greer-Burger v. Temesi*, 879 N.E.2d 174, 180 (Ohio 2007) (citing *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990)); *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008).   As with age discrimination claims, once the plaintiff has established a prima facie case of retaliation, the burden of production shifts to the defendant to "offer a non-discriminatory reason for the adverse employment action."  *Ladd v. Grand Trunk W. R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009).  If the defendant meets its burden, the plaintiff then has the burden to "demonstrate that the proffered reason was mere pretext."  *Id.*

Blizzard argues that the district court erred when it concluded that she failed to demonstrate that she engaged in protected activity.  Because Blizzard does not allege that she was retaliated against for her participation in an EEOC proceeding, her claim must be analyzed under the ADEA's opposition clause, which prohibits discrimination against an employee because she has "opposed any practice made unlawful by this section." 29 U.S.C. § 623(d).  A plaintiff asserting such a claim must prove that she took an "'overt stand against suspected illegal discriminatory action'" to establish that she engaged in a protected activity. *Coch v. Gem Indus.*, No. L-04-1357, 2005 WL 1414454, at *5 (Ohio Ct. App. June 17, 2005) (quoting *Comiskey v. Auto. Indus. Action Grp.*, 40 F. Supp. 2d 877, 898 (E.D. Mich. 1999)).  In other words, an employee "'may not invoke the protections of the Act by making a vague charge of discrimination.'" *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007) (quoting *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989) (holding that complaints about "ethnocism" were too vague to constitute protected activity)).

Blizzard asserts that she engaged in protected activity on a number of occasions. However, the district court found that the only incident that constituted protected activity was Blizzard's 2007 complaint to King that she felt she was being discriminated against because of her age. The court correctly concluded that there was no evidence "that Nutter or any other decision-maker was aware of Blizzard's conversation with King." Thus, Blizzard failed to establish the second element of a prima facie case of retaliation — the defendants' knowledge of the protected activity — with regard to that conversation.

The oral complaints Blizzard made to Hauenstein on May 30, 2006 qualify as protected activity. Blizzard told Hauenstein that she was "treated differently than younger employees" and that she "received emotionally abusive and intimidating treatment from Nutter, who treated the younger people in the office much better." Blizzard also reported Nutter's remark that "[m]ost of the people here are the old people like you" to Hauenstein. MTC contests her version of these conversations and asserts that Blizzard never "put her complaints in the context of youth." But the district court was required to view the evidence in a light most favorable to Blizzard as the nonmoving party. *See Reeves*, 530 U.S. at 151. And her comment about being "treated differently" distinguishes Blizzard's communications with Hauenstein from her other oral complaints. Therefore, reviewing the evidence in the light most favorable to Blizzard, her conversations with Hauenstein constituted protected activity. Blizzard presented evidence to support the first two elements of her retaliation claim.[7]

Blizzard has failed, however, to demonstrate the causation element. Her last complaint to Hauenstein occurred more than a year before her April 2008 termination. This timing does not "raise the inference that [the] protected activity was the likely reason for the adverse action." *Lindsay v. Yates*, 578 F.3d 407, 418 (6th Cir. 2009)

---

[7]Blizzard contends that Hauenstein's participation in the decision to terminate her employment is sufficient to show MTC's knowledge of the protected activity. Indeed, the record is unclear as to who made the ultimate decision to terminate Blizzard. Hauenstein states that Nutter made the decision, while Nutter maintains that Boyer and Hauenstein made the decision based on his recommendation. Construed in the light most favorable to Blizzard, all three participated in the decision, and this satisfies the element of awareness on the part of the defendants.

(internal quotation marks omitted) (explaining that temporal proximity between an assertion of rights and an adverse action is sufficient only when "an adverse employment action occurs *very close* in time after an employer learns of a protected activity" (internal quotation marks omitted)). Blizzard has presented no extrinsic evidence to support her assertion that the conversation with Hauenstein precipitated MTC's termination decision.[8] *See Greer-Burger*, 879 N.E.2d at 180. In addition to the conversation with Hauenstein, Blizzard lists several other communications that she contends were protected activity: (1) a complaint to Parker in May 2006; (2) three conversations with King between May 2006 and September 2006; and (3) a complaint to Boyer in December 2006.[9] Assuming that these communications constituted protected activity, Blizzard failed to establish a causal connection between the communications, all of which took place in 2006, and her termination in 2008. *See Lindsay*, 578 F.3d at 418. Thus, Blizzard's claim of retaliation fails.

Further, we reject Blizzard's attempt to revive her retaliation claim by arguing that her June 2006 appraisal constitutes an adverse action. According to Blizzard, her poor evaluation was "retaliatory conduct" because it occurred "within days after [she] first engag[ed] in protected activity."[10] *See Yates*, 578 F.3d at 418 ("Causation can be proven indirectly through circumstantial evidence such as suspicious timing."). However, to establish the third element of her retaliation claim, Blizzard must prove that

---

[8]Blizzard asserts that the preferential treatment of Thomas constitutes evidence of retaliatory conduct. However, her complaints to Hauenstein concerned the more favorable treatment of Thomas as a younger employee. Since she alleges that the disparate treatment took place before she engaged in protected activity, she cannot also use that disparate treatment as evidence of retaliation.

[9]Blizzard complained to Teresa Parker that she was "expected to work longer hours, [and] the younger employee in the office was not working the additional hours." In her various conversations with King, Blizzard complained about "being berated by Nutter without basis when the youngest employee did as she pleased without repercussion" and described feeling "singled out by Nutter" when she received a performance evaluation and Thomas did not. Blizzard alleges that she complained to Boyer in December 2006 that she "had been singled out" and that the "younger employees were not being required to help in the office."

[10]Here, Blizzard primarily refers to an e-mail, entitled "Work Hours," that she sent to Bryson, Parker, and Hauenstein on May 25, 2006, expressing her frustration with the extra time she was required to work to accommodate Thomas's training schedule. Blizzard alleges that "Nutter admitted to Blizzard that he gave her the poor appraisal as reprisal for sending" the "Work Hours" e-mail. The district court rejected Blizzard's argument that the e-mail was protected activity, and Blizzard did not dispute the conclusion on appeal. However, Blizzard's May 2006 conversation with Hauenstein — which was protected activity — also took place a short period before her evaluation from Nutter.

the performance evaluation constituted a materially adverse action. An adverse action is material if it "would 'dissuade[] a reasonable worker from making or supporting a charge of discrimination.'" *Lahar v. Oakland Cnty.*, 304 F. App'x 354, 357 (6th Cir. 2008) (alteration in original) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Generally, a negative employment evaluation does not rise to this level unless it "significantly impact[s] an employee's wages or professional advancement." *James v. Metro. Gov't of Nashville*, 243 F. App'x 74, 79 (6th Cir. 2007). Blizzard has produced no evidence to support a conclusion that her June 2006 appraisal reduced her compensation or possibility for future advancement.[11] Therefore, the 2006 performance evaluation was not a materially adverse employment action for the purposes of Blizzard's retaliation claim. Blizzard failed to establish a prima facie case of retaliation under the ADEA or Ohio law.

### III.

We **AFFIRM** the district court's grant of summary judgment.

---

[11]Although Blizzard applied for a different position within MTC in 2006, she does not argue that her negative evaluation influenced the college's decision not to hire her for that position.