HELENE N. WHITE, Circuit Judge,
concurring in part and dissenting in part.
I agree the district court properly entered summary judgment on Hale’s public-policy claim; however, I do not agree that summary judgment was appropriate on her age-discrimination claim. By failing to view the record in the light most favorable to Hale, and misapplying the applicable law, the majority erroneously concludes that Hale failed to prove that Mercy did not honestly hold a belief that it discharged Hale because she falsified her timekeeping records. To the contrary, a jury could reasonably conclude that Mercy’s proffered reasons for dismissing Hale were not honestly held and were pretext for unlawful age discrimination.
I.
The majority missteps at the beginning of its analysis of Mercy’s honest-belief defense when it states “Mercy’s proffered legitimate, nondiscriminatory reasons for its termination decision [are] that Hale altered her timecards and failed to use the phone system to log her time, as required by hospital policy.” Maj. Op. 7. Although Gaynor identified those reasons as “serious” problems if Hale could not explain them, Mercy in fact dismissed Hale, according to the discharge letter, for “[fjalsi-fying timekeeping records” and “[alpprov-ing own time sheet.”[1] Thus, the relevant question is whether Mercy honestly believed Hale falsified her time records and approved her own timesheet in violation of its policy.
There is no record evidence that Hale falsified her timesheets, i.e., recorded hours she did not actually work. But the majority concludes that it was reasonable for Mercy to infer from the timecard alterations that Hale falsified her time records. That conclusion belies the facts. According to Heintzelman, Mercy’s termination process includes a discussion with the employee “to go through what the issues are” and if the employee cannot satisfactorily explain the alleged misconduct, “then we move to the next step[,] which would be termination according to our policies.”[2] Accordingly, Mercy provided Hale a termination hearing, and, as Heintzelman testified, warned Hale that if she could not explain the alterations, she would be discharged. Thus, contrary to the majority’s view, Mercy inferred from Hale’s failure to explain the edits that she falsified her’ time — not from the alterations themselves. And that inference is unworthy of credence.
*405 Mercy’s decision to dismiss Hale was not reasonably informed and considered. Blizzard v. Marion Technical Coll., 698 F.3d 275, 286 (6th Cir.2012). At the termination hearing, Mercy denied Hale’s request to consult her calendar and other sources to aid her in explaining her time-card edits, even though it had asked her for an explanation. Under the modified-honest-belief rule, the employee “must be afforded the opportunity to produce evidence to the contrary.” Id. (internal quotation marks omitted). But because Mercy assumed without proof that Hale stole time, it did not reasonably rely on the “particularized facts that were before it at the time the decision was made.” Id. (internal quotation marks omitted). . Had Mercy sought to make an informed and considered decision, it would have afforded Hale a meaningful opportunity to explain the timecard alterations and allowed her to consult her calendar.[3] Moreover, Hale’s supervisor, Bill Carroll, had offered an explanation before the discharge meeting for Hale’s timecard edits,[4] but it does not appear Mercy considered the proffered explanation, despite Heintzelman’s testimony that Mercy would have investigated any explanation given.
II.
Viewing the evidence in the light most favorable to Hale, and considering the totality of the evidence, Hale has shown that Mercy’s reasons were pretextual. A jury could reasonably find that Mercy’s rationales were pretext for unlawful discrimination because, coupled with a showing that Mercy did not hold an honest belief in the reasons for discharging Hale, Mercy offered conflicting reasons for auditing Hale’s time records and did not discipline Abigail Muchmore, the 30-year-old buyer in Mercy Clermont’s pharmacy, even though she also altered her timesheets.
Mercy claims Heintzelman ordered the audit of Hale’s time records at 10:00 a.m. after a Mercy Clermont pharmacist informed her that he had an inventory issue and could not locate Hale to resolve it. Heintzelman did not attempt locate or contact Hale, or any other personnel in the pharmacy, including Muchmore, who was the Mercy Clermont buyer. The record supports four other explanations for the audit: (1) Hale averred that Gaynor told Hale in the termination meeting that Mercy reviewed Hale’s time records as a result of a random audit; (2) According to a June 10, 2011, 6:39 p.m. email, Heintzelman asked Gaynor if Hale “clocked out or marked herself out” after receiving a 4:39 p.m. email from the pharmacist saying he could not locate Hale; (3) Gaynor testified that Heintzelman ordered the audit a couple of weeks before June 10, 2011, to determine the amount of time Hale was spending at Mercy Clermont; and (4) Another HR consultant, Angie Ferrell, told Mercy’s third-party administrator that Mercy investigated Hale’s time records because her “manager became concerned that abuses of the timekeeping system were occurring,” which Carroll disputed.
Hale contends that these inconsistent explanations for the audit of her time records support an inference of pretext because the record “shows a cover-up and an incredible explanation of why [Hale] was *406 singled out for a completely unnecessary time-card audit.” Indeed, Mercy’s inconsistent reasons and unequal treatment of-Hale in relation to Muchmore who was the buyer for the pharmacy involved tend to support a finding that Hale’s alleged policy violations did not actually motivate Mercy’s decision to discharge her. See Tinker v. Sears Roebuck & Co., 127 F.3d 519, 523 (6th Cir.1997).
Further, Mercy’s pharmacy department employees, including Muchmore, had for years recorded time as Hale did, and the pharmacy director himself testified he was unware of Mercy’s policy prohibiting alterations of timecards. Despite learning that Muchmore engaged in the same conduct as Hale, Mercy did not discipline or dismiss Muchmore. Mercy’s adherence to its timekeeping policies — strictly in Hale’s case and not at all in Muchmore’s — precludes summary judgment.
For these reasons, I concur in part and dissent in part.

. The majority also holds that "there is ample evidence to support Mercy's belief that Hale ‘change[d]’ her timesheets." Maj. Op. 401 (alteration in original). This was not a basis for Mercy’s decision, and even if it were, Mercy’s policy does not prohibit all "change[sj” to one’s timesheet but rather ”edit[s] [to] timecards to ... change the time actually worked.” (Emphasis added.) The record evidence supports that Hale edited her timesheets to reflect the time she actually worked — not to steal time.

. For this reason, the majority is incorrect that "Hale points to no evidence indicating that defendant was required to give her an opportunity to explain her conduct before terminating her.” Maj. Op. 400.

. Although Hale also admitted that she occasionally approved her own timesheets, Heint-zelman and Gaynor did not question Hale on this alleged violation of Mercy's policy, which formed a basis of her dismissal. Mercy’s failure to investigate the alleged violation is additional evidence that Mercy did not reasonably rely on an informed and considered decision.

. Carroll told Heintzelman that Hale’s after-the-fact added time could be due to Hale attending offsite meetings.