PER CURIAM.
Christopher Moffat, Clarissa Thompson, and Patricia Schmidt appeal from the district court’s grant of summary judgment to their former employer, Wal-Mart Stores East, LP (Walmart),[1] on their age discrimination claims brought under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634, and analogous state law, Ohio Rev. Code § 4112.02. Because there are genuine issues of material fact regarding *343 whether Walmart’s proffered reason for discharging Plaintiffs was pretext for age discrimination, we REVERSE.
I.
Walmart employed Plaintiffs at its Brooklyn, Ohio, store in the Lawn and Garden Department. Moffat worked as a sales associate for seven years, and Thompson for more than ten years. Schmidt, who served for more than sixteen years, was employed as the Brooklyn store’s Lawn and Garden Department Manager. According to Assistant Store Manager Brandon Donegan, Walmart assigned six employees to work primarily in the Lawn and Garden Department: Moffat (age 54), Thompson (62), Schmidt (59), and three younger associates (19, 21, and 23).
In June 2010, Walmart Asset Protection Coordinator Debbie Jenkins, while reviewing surveillance camera footage, saw Plaintiffs bag plants at a cash register, set the bags aside, and later carry the bags out of the store without paying. She suspected Plaintiffs of theft, and informed her supervisor, 31-year-old Market Asset Protection Manager Joe Theobald, who also viewed the video footage. Theobald instructed her to complete an investigation “by the book.”
As part of her investigation into the suspected theft, and after discussing the video with Theobald, Jenkins, along with an assistant store manager, interviéwed each Plaintiff individually. After Plaintiffs admitted to taking the plants, Jenkins accused them of violating Walmart’s policy against accepting gifts from vendors. Walmart’s Statement of Ethics, to which employees must adhere, states that an employee “is to never accept gifts or entertainment from any supplier, potential supplier, government, or any person the associate has reason to believe may be seeking to influence business decisions or transactions.”[2] The policy does not, however, define the term “gift.”
According to Thompson, an employee of Bonnie Bell Plants (Bonnie Bell) — a Wal-mart vendor and owner of the plants[3]— removed the plants that “didn’t look good” from the display racks and placed them in a cart. He then took the cart to Thompson and asked her to throw the plants away. Normally, the vendor’s employee loads the plants into his truck — rather than discard them at the Walmart store— but the store’s greenhouse had had an aphid infestation. Thompson, who apparently has a “green thumb,” noticed that some of the plants could be salvaged and commented to the Bonnie Bell employee that she “could save some of [the plants],” to which he responded, “[G]o for it.” Thompson shared the vendor’s statement with Moffat and Schmidt, and they each took some plants they thought could be saved. Thompson discarded the remaining plants.[4]
*344 During the interviews with Jenkins, Plaintiffs each identified others they believed engaged in similar conduct. Moffat testified that he was sure he told Jenkins and the assistant manager that he knew of at least three Lawn and Garden associates who had taken plants in previous years, including a department manager. Thompson similarly stated that several employees took discarded plants from Bonnie Bell in prior years and that members of management knew the employees were taking the plants. Schmidt told Jenkins that associates occasionally received items, including cosmetic samples, mouthwash, and greeting-card envelopes, from other vendors.
Plaintiffs also provided a written statement to Jenkins. Moffat wrote: “Bonnie Plant, as they do each year, threw out their vegetables. They told Clarissa [Thompson] to take whatever she wanted & throw the rest away. She took some, Pat [Schmidt] & I took 1 pepper plant & 1 oregano plant. Anyone else? I don’t know.” In her statement, Thompson wrote:
I honestly did not realize I was doing wrong in taking the tomato [plants] that were being thrown away. I took 3. I also was not aware that I cannot accept a cup of coffee or plants from [a] customer’s garden. I would in no way ever[ ] do wrong to Wal-Mart. I try to save and do as much as I can for the company and customers.
I am very sorry and will not accept gifts or anything ever again.
Schmidt stated:
I received tomato plants from a vendor that were going to be thrown away and said that we may have them[.] From what I was told[,] they have done this in the past[.] I did not know that we were not allowed to receive gifts from any one. I am sorry for what I done and [it] will never happen again[.] My associate done this [for] five years and said that the vendor didn’t want to throw away and said it was fine sense we don’t pay for them[.]- Again I am very sorry[.] I would never had done this if I known this[.] I am new in this Dept, [sic throughout]
After interviewing Plaintiffs and taking their written statements, Jenkins turned her investigative file over to Theobald. The file included records with Plaintiffs’ dates of birth. In his deposition, Theobald could not recall whether he reviewed the file before deciding to terminate Plaintiffs’ employment; but he testified that, ordinarily, he does not review the file, including written statements, before deciding whether to discipline an employee. Based on Plaintiffs’ admissions to taking plants, Theobald considered their conduct as demonstrating “compromised integrity,” which, under Walmart’s Coaching for Improvement Policy, can qualify as “gross 'misconduct” and subject the employee to immediate termination. He decided to discharge Plaintiffs.
Jenkins and an assistant store manager met with each Plaintiff to communicate Theobald’s decision. Plaintiffs were provided an exit interview form that states the reason for the termination as “Gross Misconduct — Integrity Issue.” On Mof-fat’s form, the manager commented: “Chris was identified by Asset protection as receiving gratuity from a vendor which is direct violation of the company’s ethics policy.” The manager wrote on Thompson’s form that “Clarissa is being terminated due to accepting gifts from a local vendor[;] the gifts were tomato plants and were near death but Walmart policy states that no associate working for Walmart will *345 accept gifts from a vendor no matter how small.” ■ Schmidt’s exit interview form states that “Patricia was accepting flowers from vendors with out [sic] paying for them.”
Walmart discharged Schmidt • on June 21, Thompson on June 23, and Moffat on June 28, 2010. On June 23 and: June 29, 2010 — the same day it discharged Thompson and one day after it discharged Mof-fat — Walmart hired 19- and 21-year-old temporary associates (both later made permanent) “to work the hours that Mr. Mof-fat and Ms. Thompson would have worked.” Walmart: did not replace Schmidt; Walmart claimed that because the store had too many department managers, it transferred her duties to another department manager who was older than Schmidt, but who was' later replaced after her retirement by a 26-year-old in August 2010. Walmart does not dispute that Plaintiffs were otherwise good employees.
The district court determined that Schmidt could not establish a prima facie case of age discrimination because she did not show that Walmart treated substantially younger, similarly situated employees better, and concluded that Plaintiffs did not rebut Walmart’s nondiscriminatory reason for discharging them and thus could not show pretext. Plaintiffs now appeal the district court’s entry of summary judgment in Walmart’s favor.
II.
We review de novo a district court’s order granting summary judgment. Rudi-sill v. Ford Motor Co., 709 F.3d 595, 600 (6th Cir.2013). An award of summary judgment is appropriate “if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(a); Mitchell v. Fankhau-ser, 375 F.3d 477, 479 (6th Cir.2004). In determining whether the grant of summary judgment was proper, “we must view all evidence in the light most favorable to the nonmoving party.” Kleiber v. Honda of Am. Mfg., Inc., 485 F.3d 862, 868 (6th Cir.2007) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). “The mere existence of a scintilla of evidence to support the plaintiffs position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.” Copeland v. Machulis, 57 F.3d 476, 479 (6th Cir.1995) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
III.
Under the ADEA, it is unlawful for an employer to discharge an employee who is at least 40 years old because of the employee’s age. 29 U.S.C. §§ 623(a)(1), 631; Mickey v. Zeidler. Tool & Die Co., 516 F.3d 516, 521 (6th Cir.2008). Similarly, it is an unlawful discriminatory practice in Ohio for an employer to discharge an employee because of the person’s age. Ohio Rev. Code § 4112.02(A). Age-discrimination claims brought under Ohio law are analyzed under the same standards as claims brought under the ADEA. Minadeo v. ICI Paints, 398 F.3d 751, 763 (6th Cir.2005). A plaintiff can prove unlawful age discrimination under the ADEA with circumstantial evidence — that is, “proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred.” Wexler v. White’s Fine Furniture, Inc., 317 F.3d 564, 570 (6th Cir.2003).
A.
A plaintiff without direct evidence of discrimination can establish a prima facie *346 case of age discrimination by showing: (1) she was at least 40 years old at the time of the alleged discrimination; (2) she was subjected to an adverse employment action; (3) she was otherwise qualified for the position; and (4) she was replaced by a younger worker, or there are circumstances that support an inference of discrimination. Mickey, 516 F.3d at 521; Blizzard v. Marion Technical Coll., 698 F.3d 275, 283 (6th Cir.2012); Coomer v. Bethesda Hosp., Inc., 370 F.3d 499, 511 (6th Cir.2004). “The key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence that he or she suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination.” Clay v. United Parcel Serv., Inc., 501 F.3d 695, 703 (6th Cir.2007) (internal quotation marks omitted).
Walmart does not dispute that Moffat and Thompson established a prima facie case of age discrimination; however, it argues that although Schmidt can establish the first three elements, she cannot show Walmart treated her less favorably than similarly situated employees outside the protected class.[5] Schmidt contends younger employees (1) had engaged in the same conduct as Plaintiffs without consequence, (2) were disciplined less harshly for more serious misconduct, and (3) had accepted items from vendors without discipline. Walmart maintains that there is no evidence that the three younger associates Schmidt identified are outside the ADEA’s protected class and that the evidence does not support that the younger workers accepted plants from a vendor or were subject to discipline or investigation by Theo-bald. The district court concluded that the younger employees were not proper comparators, in part because the younger employees did no,t share the same “ultimate decision-maker” (i.e., Theobold) as Schmidt.
Contrary to Walmart’s contention, Schmidt presented a prima facie case of age discrimination because the circumstances of her discharge — identical to her co-plaintiffs in all relevant respects other than her replacement[6] — support an infer *347 ence of age discrimination. The evidence shows that Walmart discharged three older employees (ages 54, 59, and 62 years) for engaging in the same conduct, leaving the Lawn and Garden Department staffed primarily by three significantly younger employees (ages 19, 21, and 23),[7] and hired two significantly younger employees as replacements (ages 19 and 21).[8] The composition of the Lawn and Garden Department before and after Plaintiffs’ terminations supports an inference of age discrimination. We conclude Schmidt satisfied the fourth prong and thus established a prima facie case of age discrimination.
B.
Once a plaintiff has satisfied her initial burden, the burden of production shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the adverse decision. Mickey,, 516 F.3d at 521. Plaintiffs do not dispute that Walmart articulated a legitimate, nondiscriminatory reason for its discharge decision — that Plaintiffs violated its policy against accepting gifts from suppliers. Thus, the burden shifts to Plaintiffs to show that the stated reason is pretext for age discrimination. Id.
1.
To avoid summary judgment, a plaintiff must present evidence from which a jury could reasonably find that the employer’s proffered reason for the adverse employment action was not the real reason that it discharged her and that unlawful age discrimination was the true reason. Chen v. Dow Chem. Co., 580 F.3d 394, 400 (6th Cir.2009). A plaintiff generally can show that the stated reason was not the real reason by showing that it (1) has no basis in fact, (2) did not actually motivate the adverse employment decision, or (3) was insufficient to motivate discharge. Blizzard, 698 F.3d at 285. This first category includes evidence that the employer’s basis for the plaintiffs discharge never happened, and the second category requires the plaintiff to admit the factual basis underlying the employer’s proffered reason and further admit that the conduct could motivate dismissal. Chattman v. Toho Te-nax Am., Inc., 686 F.3d 339, 349 (6th Cir.2012). “The third category of pretext consists of evidence that other employees, particularly employees outside the protected class, were not disciplined even though they engaged in substantially identical conduct to that which the employer contends motivated its discipline of the plaintiff.” *348 Id. This court does not require rigid application of these three criteria; rather, the question is a commonsense one: “Did the employer fire the employee for the stated reason or not?” Blizzard, 698 F.3d at 285. At the summary-judgment stage, the plaintiff need only rebut the employer’s proffered rationales to carry her burden; she need not disprove them. Griffin v. Finkbeiner, 689 F.3d 584, 593 (6th Cir.2012). Courts should exercise caution in granting summary judgment for the defendant once the plaintiff has made a prima facie case and a showing of pretext because “an employer’s true motivations are particularly difficult to ascertain, thereby frequently making such factual determinations unsuitable for disposition at the summary judgment stage.” Singfield v. Akron Metro. Hous. Auth., 389 F.3d 555, 564 (6th Cir.2004) (citations omitted).
Here, Walmart asserts that Theobold discharged Plaintiffs for violating its gifts policy. But Walmart does not have a zero-tolerance rule for violations of that policy, since Theobold and Jenkins both admitted that they could have allowed Plaintiffs to keep their jobs. And Plaintiffs each testified that they did not know they had violated the gifts policy when they took the plants home. Thus, Walmart fired the plaintiffs for what was at worst a technical — and seemingly innocent — violation of the gifts policy. Given that Walmart’s discipline guidelines encourage managers to try less-draconian measures before firing an associate for any reason, a reasonable jury could find that Walmart did not dismiss Plaintiffs for taking the plants.
Other indicia of pretext appear in the record, though not argued on appeal by Plaintiffs. Consistent with his indifferent attitude, Theobald testified that after discharging Plaintiffs, he reviewed their files and learned that they alleged younger employees had taken plants in previous years, but he did not open an investigation into the allegations or instruct another person to do so. Further, Theobald’s decision-making process did not comport with Walmart’s Investigation/Suspension Policy.[9] Under that policy, Human Resources conducts all investigations, except those involving fraud or theft. When theft or fraud is suspected, Asset Protection or Corporate Investigations will investigate, not Human Resources. During a theft investigation, if Asset Protection determines there simply was no theft or fraud, it will continue and complete the investigation; however, if Asset Protection determines that an associate violated Walmart policy but did not engage in theft or fraud, as Jenkins and Theobald did here, it must consult with Human Resources before discharging the employee. Human Re *349 sources, in such a case, must approve Asset Protection’s decision to dismiss the employee, after it reviews all relevant records. However, Theobald was the sole decision-maker here, as Walmart emphasizes, and it appears he did not consult with Human Resources, or seek and receive approval to discharge Plaintiffs.[10] All of this is evidence from which a jury could reasonably conclude that Plaintiffs’ alleged misconduct did not actually motivate Walmart’s decision, and thus, Wal-mart’s proffered rationale was not the real reason for discharging Plaintiffs.
2.
Even if a plaintiff provides sufficient evidence to create a factual dispute regarding the falsity of the employer’s proffered reasons, the employer is entitled to summary judgment if the honest-belief rule applies. Where the employer has an “honest belief’ in the nondiscriminatory basis on which it has made its adverse employment decision, the employee does not show pretext. Tingle v. Arbors at Hilliard, 692 F.3d 523, 530-31 (6th Cir.2012). The “key inquiry in assessing whether an employer holds such an honest belief is whether the employer made a reasonably informed and considered decision before taking the complained-of action.” Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 598-99 (6th Cir.2007) (internal quotation marks omitted). An employer that reasonably and honestly relies on particularized facts in making an adverse employment decision is entitled to summary judgment on pretext, “even if its conclusion is later shown to be mistaken, foolish, trivial, or baseless.” Chen, 580 F.3d at 401 (internal quotation marks omitted). However, if the plaintiff can show that the employer’s decisional process was “unworthy of credence” by producing “sufficient evidence to establish that the employer failed to make a reasonably informed and considered decision before taking its adverse employment action,” then the honest-belief defense does not apply. Smith v. Chrysler Corp., 155 F.3d 799, 807-08 (6th Cir.1998) (internal quotation marks omitted).
Here, Theobald’s own testimony shows that he did not ascertain or know all the relevant facts, and that he did not think it important to know such facts before terminating Plaintiffs’ employment. The honest-belief defense, therefore, does not apply. In sum, considering the totality of the circumstances, a jury could reasonably find that Walmart’s proffered reason for discharging Plaintiffs is false.
C.
A plaintiffs prima facie case, together with evidence showing the employer’s proffered reason is false, permits the jury to infer the ultimate fact of intentional .discrimination. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147-49, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); St. Mary’s Honor Ctr. v. Hicks, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). No additional proof of discrimination is required because “[p]roof that the *350 defendant’s explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive.” Reeves, 530 U.S. at 147, 120 S.Ct. 2097; Hicks, 509 U.S. at 511, 113 S.Ct. 2742. Judgment as a matter of law may be appropriate in cases where, for example, the plaintiff’s prima facie case is not strong or the plaintiff creates “only a weak issue of fact as to whether the employer’s reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.” Reeves, 530 U.S. at 148, 120 S.Ct. 2097. There is sufficient evidence here, however, to allow a jury to reasonably find that Walmart’s decision to discharge Plaintiffs was discriminatory.[11]
IV.
For these reasons, we REVERSE.

. In addition to Wal-Mart Stores East, LP, Plaintiffs named Wal-Mart Stores, Inc., and Wal-Mart Associates, Inc., as defendants in their amended complaint. But as the district court noted, Plaintiffs do not dispute that Wal-Mart Stores East, LP, is the sote proper defendant.

. There are two versions of Walmart’s Statement of Ethics in the record. The parties do not contend that there are material differences between them.

. Bonnie Bell’s products were “pay-per-scan” merchandise. Under Walmart's pay-per-scan program:
If an item is a pay-per-scan item, Wal-mart does not pay the vendor for the item unless and until it is sold to a customer. Accordingly, if the item is not sold and the vendor decides to take the item off of Wal-mart’s shelves and either try to sell it elsewhere or destroy it, for whatever reason, Walmart is not obligated to pay the vendor anything for that item. Essentially, the item never “belongs” to Walmart. Instead, in exchange for providing the vendor a venue in which to sell their [sic] product, Wal-mart receives a specified portion of the sale price of the item.

.Thompson planted the plants she took in a neighbor's yard where they thrived. The *344 plants Moffat and Schmidt took did not revive.

. Schmidt does not dispute that she was not replaced — by a younger employee or otherwise. But Walmart's claim that Schmidt failed to prove that the three younger employees are outside the protected class is misplaced. An ADEA plaintiff need not show that she was treated less favorably than someone outside the protected class. See O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312-13, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) ("The fact that one person in the protected class has lost out to another person in the protected class is ... irrelevant, so long as he has lost out because of his age---- [T]he fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside die protected class.”). Rather, she must show circumstances that support an inference of unlawful age discrimination. Blizzard, 698 F.3d at 283; Clay, 501 F.3d at 703; see also Macy v. Hopkins Cnty. Sch. Bd. of Educ., 484 F.3d 357, 365 (6th Cir.2007) (stating that the fourth element requires a showing that a plaintiff “suffered [the adverse employment action] under circumstances which give rise to an inference of unlawful discrimination”), abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., 681 F.3d 312 (6th Cir.2012). Such circumstances may, but need not, include an allegation that plaintiff was treated less favorably than an employee who is at least six years younger. Id. at 283-84; Grosjean v. First Energy Corp., 349 F.3d 332, 340 (6th Cir.2003) (establishing bright-line rule that "an age difference of six years or less between an employee and a replacement is not significant”).

. Although Schmidt was the Lawn and Garden Department Manager, and Moffat’s and Thompson's supervisor, Walmart does not contend that her alleged misconduct was more egregious than Moffat’s or Thompson’s.

. Walmart argued below that Plaintiffs' representation that the Lawn and Garden Department was staffed by five significantly younger employees is factually unsupported; Walmart asserted that at least fifteen employees worked in the Lawn and Garden Department, relying on an untitled spreadsheet in the record, and that their ages ranged from 19 to 77 years. Contrary to Walmart’s argument, Plaintiffs’ contention is supported by record evidence; Walmart's is not. First, Plaintiffs cite Assistant Store Manager Donegan’s deposition, in which he was asked to identify on the spreadsheet the employees who "worked primarily in the lawn and garden department as opposed to some other department at the Brooklyn Wal-Mart.” Donegan identified six individuals, including the Plaintiffs. Second, the spreadsheet alone does not support Wal-mart's version of the facts because it does not identify the departments of the employees listed on it,

. In its brief, Walmart concedes that it replaced Moffat and Thompson with 19 and 21-year-olds, although it asserts the two new hires were temporary associates. That the new hires were temporary — rather than permanent — does not alter our analysis. See Tuttle v. Metro. Gov’t of Nashville, 474 F.3d 307, 318 (6th Cir.2007) (“In cases where the new hire takes on the plaintiff’s former job responsibilities, merely designating the new hire ‘temporary’ will not defeat the fourth element.”).

. The parties make no issue over Schmidt's role as a department manager. Although Walmart maintains that “no Walmart salaried member of management had ever given [Plaintiffs] permission to take any plants home,” Schmidt (and a prior Lawn and Garden Department Manager) tacitly approved the taldng of the discarded plants when she also took plants. (Emphasis removed.) Wal-mart suggests only salaried managers, not hourly managers like Schmidt, had authority to resolve ethical issues. However, that distinction is at odds with Walmart’s written policies. According to Walmart's written job description for the Lawn and Garden Department Manager, an essential function of Schmidt's duties included supervising Lawn and Garden Department employees by "teaching and supporting Company policies and procedures [and] ensuring compliance." The job description also required her to be proficient in ethics and compliance. Moreover, if an employee has questions about a gift or an ethical issue, Walmart policy instructs him to contact his supervisor or the Ethics Office. A jury might reasonably find that Walmart’s stated reason for dismissing Moffat and Thompson is pretexual in light of a manager’s tacit approval of the alleged misconduct.

. Plaintiffs allege that younger employees had been disciplined less harshly for. more serious misconduct and that the younger employees are proper comparators. For instance, a 26-year-old associate was reprimanded for "writting [sic] a bad check and then recieving [sic] a payroll advance,” which the supervisor concluded was "like stealing merchandis[e] from the store.” Walmart contends, and the district court agreed, that the younger employees were not similarly situated to Plaintiffs because they were disciplined by someone other than Theobald. The disparity in discipline (and decision maker) is perhaps explainable in part by Theobald’s apparent failure to follow Walmart’s Investigation/Suspension Policy in investigating Plaintiffs’ alleged policy violations.

. Plaintiffs assert that certain ageist remarks by a Walmart Senior Executive constitute evidence of discriminatory animus, citing an internal memorandum proposing cost-savings strategies to employee benefits. Specifically, Plaintiffs contend the memorandum’s linking of its aging workforce and higher health-care costs indicates bias. Assuming the memorandum does indicate age-related bias, this court evaluates statements allegedly showing an employer’s age bias under the following four factors, taking all of the circumstances into account: “(1) whether the statements were made by a decision-maker or by an agent within the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination.’’ Peters v. Lincoln Elec. Co., 285 F.3d 456, 478 (6th Cir.2002). The memorandum fails all four factors. It was drafted in 2005 by a Senior Executive for Walmart’s Board of Directors, and there is no evidence that Theobald read the memorandum at any time before dismissing Plaintiffs.