**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0420n.06

No. 15-6385

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 27, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| KAREN MENCARELLI, | ) | |
| | ) | |
| Plaintiff – Appellant, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| v. | ) | MIDDLE DISTRICT OF TENNESSEE |
| | ) | |
| ALFRED WILLIAMS & CO., | ) | **OPINION** |
| | ) | |
| Defendant – Appellee. | ) | |
| | ) | |

Before: GILMAN, WHITE, and STRANCH, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Karen Mencarelli appeals the district court's

grant of summary judgment to her former employer, Alfred Williams & Company (AWC), on

her claims brought under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623,

and the Tennessee Human Rights Act (THRA), Tenn. Code Ann. § 4-21-401(a)(1). The issue is

whether Mencarelli presented sufficient evidence of pretext to rebut the legitimate non-

discriminatory reasons AWC proffered for discharging her. We agree with the district court that

she did not, and therefore AFFIRM.

**I.**

AWC, a furniture dealership that provides space-design and project-management

services, operates in several markets in the southeast, including Nashville, Tennessee. AWC's

regional offices are headed by "market presidents," who oversee design, account (sales)

management, and project-management departments, manage AWC's brand in the given market,

and develop business. Market presidents decide how to allocate accounts among account managers.

Ted Limmer, AWC's Nashville market president since May 2011, hired Mencarelli as an account manager in June 2012 to take over the Vanderbilt University account. Mencarelli, aged forty-eight at that time, had more than twenty years of sales experience that included handling the University of Miami account at her last place of employment.

AWC operates under a team structure to service its customers. The Vanderbilt account team[1] consisted of account manager Mencarelli, designer Piper Fritsch, a woman in her late 20s or early 30s, project manager Kim Gardner, a fifty-four year old male, and market president Limmer, as needed. Account managers act as liaisons between their accounts and the AWC team, manage accounts assigned to them, and look for new opportunities to grow their base of business. Account managers are also expected to assist designers and project managers as needed. Designers work closely with account managers to understand customer needs and to ensure that furniture selected for a specific project fits within the designated space and is ordered and installed correctly. Designers are assigned to multiple accounts, so Fritsch worked on accounts other than Vanderbilt and reported to account managers other than Mencarelli. Project managers are assigned to assist specific account managers as needed.

The seventeen employees who worked at AWC's Nashville office when Mencarelli was employed included five account managers (Mencarelli being one) and nine designers, all of whom Limmer oversaw. During that time, Limmer also hired Cecilia Reeves, age fifty-eight, as

---

[1] During the first several months of Mencarelli's employment, other account managers worked with her on the Vanderbilt University account.

an account manager. Reeves is still employed as an account manager at AWC and has a good working relationship with Limmer.

Mencarelli worked at AWC from August 1, 2012 until Limmer discharged her on March 7, 2014, when she was fifty years old. Limmer hired Alicia Cragg, a twenty-nine year old[2] who had five to seven years' experience working for a competitor of AWC, to replace Mencarelli.

**A.**

Mencarelli brought this age-discrimination[3] action, alleging that she was subjected to different terms and conditions of employment than younger employees.[4] AWC filed a motion for summary judgment, asserting that Limmer discharged Mencarelli because: 1) he lost confidence in Mencarelli's ability to work within AWC's team structure, i.e., within the Vanderbilt team because of her interactions with designer Fritsch, and outside that team, due to her interactions with other account managers; and 2) Limmer believed that Vanderbilt's confidence in Mencarelli was diminishing.

---

[2] Mencarelli testified on deposition that Cragg was twenty-nine years old when Limmer hired her. Limmer testified that he did not know Cragg's age but estimated that she was in her early 30s when he hired her.

[3] Mencarelli's complaint also alleged retaliation, but she abandoned that claim in response to AWC's motion for summary judgment.

[4] The complaint alleged that Mencarelli complained to her supervisor about the lucrative accounts being given to a younger, less experienced employee; that her work was subjected to a higher level of scrutiny than younger employees' work; that she was never told her performance was lacking and was discharged on March 7, 2014 with no reason stated; and that she was replaced by a younger employee.

Mencarelli's deposition testimony, however, contradicted many of the allegations in her complaint. She testified that she did not complain to Limmer that she was being treated differently than younger employees and told only one colleague that she and Limmer had personality conflicts and that Limmer did not like her. Mencarelli also testified that when she told Limmer she was interested in assuming some accounts of an account manager who had resigned, Limmer had already assigned those to other account managers. Mencarelli acknowledged that Limmer had counseled her repeatedly about her job performance as well.

AWC submitted Limmer's deposition testimony in support of its motion for summary judgment. Limmer testified that he had lost confidence in Mencarelli's ability to operate within AWC's team structure for several reasons, including that Mencarelli interacted with Fritsch as though Fritsch were her dedicated designer, and that he had to counsel Mencarelli several times about monopolizing and over-utilizing Fritsch's time. Limmer also testified that, during an important kick-off meeting at Vanderbilt for a large 1.5 million dollar dormitory project (the Kassam project), which he attended, Mencarelli was the only AWC employee not taking notes, and that after that meeting he counseled Mencarelli that her failure to take notes sent the wrong message to Vanderbilt and to her AWC team. Limmer also testified that one of Mencarelli's main contacts at Vanderbilt, Stephanie Sieve, approached him and told him that she sensed tension between Mencarelli and Fritsch and thought Limmer should be aware of it. Limmer deduced from this that if Vanderbilt had had confidence in Mencarelli, Sieve would have raised the matter directly with Mencarelli rather than approaching Limmer.

Limmer further testified that Vanderbilt's procurement department staff, including Sieve, had recommended that the Kassam project be put out for bids and that it was only because a senior project manager at Vanderbilt intervened that the project was not put out for bid:

> The fact that that was going to go to bid, in my opinion, from Stephanie [Sieve] … is the one that suggested that, if our [AWC's] relationship was what it was, why would they [Vanderbilt] have chose [sic] to bid it out? Wherein the past, if it was a high-profile project, it was given to Alfred Williams and Company, because they knew we could handle it. So I was starting to recognize that somethings [sic] were suffering. So the account was still maintaining, but . . . were we losing some opportunities, I felt like we were. I felt like we weren't being considered for somethings [sic] where we should have been.

PID 234-35.

Limmer additionally testified that he counseled Mencarelli that she should take her laptop home rather than leave it on her desk at work when she left the office, which usually was at 5:00 p.m., because her team members and other account managers often worked later and observed that Mencarelli would leave her laptop at work. Limmer testified that Mencarelli did take her laptop home for a short time after he counseled her, but then reverted to leaving it at the office.

**B.**

Mencarelli testified on deposition that Limmer "picked on" her, giving as examples that he counseled her regarding her failure to take notes at the meeting regarding the Vanderbilt Kassam dormitory project and not taking her laptop home. She could think of no other examples of Limmer picking on her. Mencarelli also testified that she believed the issues Limmer counseled her on were "irrelevant" to how she did her job. When asked to state everything "that makes you think [Limmer] fired you because you were 50 years old at the time," Mencarelli responded, "I can't think of anything offhand."

AWC's motion for summary judgment argued that Mencarelli could not show that AWC's legitimate, non-discriminatory reasons for discharging her were a pretext to mask age discrimination. AWC further argued that, under the "same-actor" inference, no reasonable juror would believe that AWC discriminated against Mencarelli because of her age given that Limmer hired her at age forty-eight and discharged her less than two years later, at age fifty.

The district court concluded that Mencarelli presented insufficient evidence of pretext and granted AWC summary judgment.

**II.**

This court reviews the district court's grant of summary judgment de novo, construing the evidence and drawing all inferences in the nonmoving party's favor to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

The ADEA prohibits an employer from discharging an employee who is at least forty years old "because of such individual's age." 29 U.S.C. §§ 623(a)(1), 631. Under § 623(a)(1), "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009). The plaintiff retains the burden of persuasion, *id.* at 177; "[t]he burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision[,]" *id.* at 180.

The THRA provides that one of its purposes is to "[p]rovide for execution within Tennessee of the policies embodied in . . . the Age Discrimination in Employment Act of 1967, as amended." *Dennis v. White Way Cleaners, L.P.*, 119 S.W.3d 688, 693 (Tenn. Ct. App. 2003) (alteration in original) (quoting Tenn. Code Ann. § 4-21-101(a)). Thus, Tennessee courts apply the same general analytical framework in THRA age-discrimination cases as under the ADEA. *Id.* at 693–94; *see also Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 620 (6th Cir. 2006).

6

A plaintiff establishes a prima facie case of age discrimination by showing that she was:  1) at least forty years old at the time of the alleged discrimination, 2) subjected to an adverse employment action, 3) qualified for the position, and 4) replaced by a substantially younger person or otherwise disparately treated.  *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521 (6th Cir. 2008); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012).  If a plaintiff establishes a prima facie case, the defendant employer must articulate some legitimate, non-discriminatory reason for the challenged conduct.  If the employer meets this burden, the burden then shifts back to the employee "to demonstrate that the proffered reason is a pretext." *Blizzard*, 698 F.3d at 283 (citation omitted).

### A.  Pretext

We proceed directly to the issue of pretext because AWC concedes that Mencarelli established a prima facie age-discrimination case, and Mencarelli acknowledges that AWC proffered legitimate nondiscriminatory reasons for her discharge.  Mencarelli may establish pretext by demonstrating that AWC's proffered reasons for discharging her 1) had no basis in fact, 2) did not actually motivate her discharge, or 3) were insufficient to warrant her discharge. *See Blizzard*, 698 F.3d at 283.

Mencarelli argues that the district court erred in two ways with respect to pretext.  First, by determining that she failed to show that AWC's proffered reasons for discharging her were insufficient to motivate her discharge because Fritsch engaged in conduct substantially identical to Mencarelli's but was not disciplined or discharged.  Second, by ignoring her argument that AWC's changing reasons for discharging her raised an inference of pretext and determining that

she presented insufficient evidence that AWC's proffered reasons for discharging her had no basis in fact.

**1.**

The third category of pretext, that the employer's proffered reasons for discharging the plaintiff were insufficient to motivate the adverse employment action, can consist of "evidence that other employees, particularly employees outside the protected class, were not disciplined even though they engaged in substantially identical conduct to that which the employer contends motivated its discipline of the plaintiff." *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Gross*, 557 U.S. 167, *as recognized in Geiger v. Tower Auto.*, 579 F.3d 614, 621 (6th Cir. 2009)); *see also Rhoades v. Std. Parking Corp.*, 559 F. App'x 500, 505 (6th Cir. 2014).

Mencarelli asserts that both she and Fritsch engaged in "substantially identical conduct"; specifically, unprofessional behavior involving Vanderbilt, but that Limmer did not discipline or discharge Fritsch. In determining whether another employee was not discharged even though she engaged in substantially identical conduct to that which the employer contends motivated it to discharge the plaintiff, the individual with whom the plaintiff seeks to compare her treatment must have been similarly situated. *See Smith v. Leggett Wire Co.*, 220 F.3d 752, 762 (6th Cir. 2000) (discussing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)); *see also Madden v. Chattanooga City Wide Serv. Dep't*, 549 F.3d 666, 676 (6th Cir. 2008); *Rutherford v. Britthaven, Inc.*, 452 F. App'x 667, 671 (6th Cir. 2011).

8

To establish that an employee is similarly situated, a plaintiff is simply "required to prove that all of the *relevant* aspects of [her] employment situation were nearly identical to those of the [comparator]"; that is, that the comparator dealt with the same supervisor, was subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish her conduct or the employer's treatment of her for it. *Ercegovich*, 154 F.3d at 352 (emphasis in original) (citation omitted). "Differences in job title, responsibilities, experience, and work record can be used to determine whether two employees are similarly situated." *Leadbetter v. Gilley*, 385 F.3d 683, 691 (6th Cir. 2004).

Assuming that Mencarelli established that she and Fritsch engaged in substantially similar conduct, she nonetheless presented insufficient evidence that she and Fritsch were similarly situated to survive summary judgment. Mencarelli established only that she and Fritsch reported to the same supervisor, Limmer. As the account manager of the Vanderbilt account, Mencarelli was the head of AWC's Vanderbilt team; the "quarterback," as Limmer put it. Vanderbilt was AWC Nashville's most important account and Mencarelli's principal client. Fritsch, in contrast, worked on various accounts, reported to several account managers, and was not responsible for managing the account. Mencarelli attempts to sidestep the requirement that the comparator be subject to the same standards as she was subjected to by asserting, as she did below, PID 740 n.17, that "it would be impossible to produce such evidence because Mencarelli was the only account manager within her team." PID 382; Appellant Br. 32. But, as mentioned, in addition to Mencarelli, four other account managers at the Nashville office reported to

Limmer. Mencarelli presented no evidence that Limmer treated any younger account managers more favorably than he treated her.

We also reject Mencarelli's argument that the district court "did not consider relevant comparator evidence" in determining that AWC's proffered reasons for discharging her had a basis in fact. Appellant Br. 35. The district court did in fact consider this argument. The district court determined that even if Mencarelli established that she and Fritsch engaged in substantially similar conduct, the two "were not similarly situated for purposes of that comparison" because "it is undisputed that Mencarelli and Fritsch had different job titles, duties, and responsibilities." Thus Mencarelli "has not demonstrated that she was similarly situated to Fritsch in all necessary respects, nor has she established that she and Fritsch could be appropriately judged by the same standards." PID 740-41.

Mencarelli failed to establish pretext in this manner because she presented insufficient evidence either that AWC's proffered reasons for discharging her had no basis in fact or that they did not actually motivate her discharge.

**2.**

Next, Mencarelli asserts that the district court ignored her argument that AWC's changing rationale for her discharge evidenced pretext. Mencarelli maintained that, in response to her interrogatory requests, AWC claimed that Vanderbilt University expressed a lack of confidence in her, but on deposition, Limmer testified that no one at Vanderbilt actually complained about Mencarelli's job performance. Mencarelli maintains that, once Limmer was deposed, AWC's explanation for discharging her shifted from Vanderbilt expressing a lack of

confidence in Mencarelli to Limmer's *belief* that Vanderbilt was losing confidence in her because a main contact at Vanderbilt mentioned tension between Mencarelli and Fritsch in a meeting.[5]

> The district court addressed this argument at some length:
>
> Mencarelli contends [that AWC's proffered reasons for discharging her had no basis in fact] because no one from Vanderbilt ever expressly stated to Limmer that they had lost confidence in Mencarelli. However, Mencarelli has adduced no evidence that Limmer, who was used to dealing with Vanderbilt (AWC's main Nashville client) on a regular basis, did not *actually believe* that Vanderbilt was losing confidence in Mencarelli after the (1) meeting in which Mencarelli did not take notes and (2) conversation between Limmer and [Vanderbilt's Stephanie] Sieve in which Sieve reported tension between Mencarelli and Fritsch. Rather, Mencarelli merely disagrees with Limmer's assessment of her performance and Limmer's business judgment about what he perceived to be Vanderbilt's developing reaction to it, and calls them both "irrelevant." This is insufficient to show pretext. *See, e.g.*, *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584 (6th Cir. 1992) (holding that the plaintiff's subjective skepticism regarding the truth of an employer's representation does not raise a triable issue as to pretext); *see also Hedrick v. W. Reserve Cas. Sys.*, 355 F.3d 444, 462 (6th Cir. 2004) (noting that disagreement with what an employee's supervisor considers important to an employee's job performance is not enough to show pretext). The court will not sit in subjective judgment regarding Limmer's views on Mencarelli's job performance based solely upon Mencarelli's bare assertion, bereft of evidentiary support, that Limmer did not actually believe that Mencarelli was turning into an employee of concern. Moreover, it was for Limmer, the market president invested with the discretion to hire, evaluate, and fire account managers–and Mencarelli's direct supervisor–to decide what job performance concerns were "relevant," not for Mencarelli to make that determination. Accordingly, Mencarelli has not established that the non-discriminatory reasons proffered by AWC have no basis in fact.

PID 735-37.

---

[5] We note that AWC's reply to Mencarelli's response to the motion for summary judgment explained that its interrogatory responses were verified by its chief financial officer, not Limmer, and noted that Mencarelli's response to its motion did not argue that Limmer's lack of confidence in her ability to work within the team structure had no basis in fact.

Because the district court convincingly addressed Mencarelli's changing-rationale argument, this challenge fails.

## III.

Mencarelli's final argument is that the same-actor inference should not have been a dispositive factor in the district court's grant of summary judgment in AWC's favor. The same-actor inference "allows one to infer a lack of discrimination from the fact that the same individual both hired and fired the employee." *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 463 (6th Cir. 1995).

Here, the district court expressly acknowledged that the inference is "not dispositive" and determined that the inference "is *additional evidence* that AWC's reason for Mencarelli's termination is not pretextual." PID 743 (emphasis added); *see Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 573–74 (6th Cir. 2003) (holding that where "the factfinder decides to draw the same-actor inference, it is insufficient to warrant summary judgment for the defendant if the employee has otherwise raised a genuine issue of material fact"). The inference was not a dispositive factor in the district court's grant of summary judgment and we find no error.

## IV.

For these reasons, we AFFIRM the district court's grant of summary judgment in AWC's favor.