NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0435n.06

No. 17-2423

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Aug 23, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| DEBRA MILLEN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| OXFORD BANK, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

**BEFORE: SILER, COOK, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Debra Millen appeals the district court's grant of summary judgment to her former employer, Defendant Oxford Bank, on her federal and state-law claims of age and sex discrimination and harassment, and her claims under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601–2654. We AFFIRM the grant of summary judgment except on several of Millen's age-discrimination claims, which we REVERSE.

**I.**

Millen, a female born on October 23, 1956, began working for Oxford Bank as a teller around February 1, 1990. Between 1990 and 2000, Oxford transferred Millen between its Oxford, Lake Orion, and Clarkston branches. In 2000, Millen left Oxford for a short time, and Oxford later hired her back as a customer service representative at the Lake Orion branch. In 2004, Oxford promoted Millen from teller to assistant branch manager and transferred her from the Lake Orion branch to the Ortonville branch. In 2008, Oxford promoted Millen to branch manager and transferred her to the Addison Branch. Between 2008 and 2013, Millen's then-supervisor, Cary

Listerman, transferred Millen several times between the Addison and Lake Orion branches. In April 2013, Listerman transferred Millen to the smallest branch, Goodrich, over Millen's written protest.

Nancy Rosenstrater, age 42, supervised Millen beginning in May 2015, when Rosenstrater was promoted from Addison branch manager to Vice President of Retail Banking. Jennifer Sherby, age 42, was promoted to Addison Branch Manager when Rosenstrater was promoted.

Rosenstrater and David Lamb, Oxford's President and Chief Executive Officer, formulated a strategic plan around May 2015 under which the Goodrich branch would be closed due to poor economic performance.

On or about July 23, 2015, after conferring with Rosenstrater and Human Resources (HR) Manager Micki Kelley, Millen took an approved leave under the FMLA to care for a family member; her leave was set to expire on October 15, 2015. Millen informed Oxford that she would, in fact, return to work as planned, and received a letter from Oxford around September 4, 2015 confirming her return to work on October 15, 2015.

However, around October 8, 2015, Millen received a separation and release agreement from Oxford stating that her employment was terminated effective September 30, 2015; no reason was stated for that termination. Millen was 57-years old at the time. After filing a charge with the EEOC, Millen instituted this action in federal district court. Following discovery, Oxford moved for summary judgment on all of Millen's claims.

The district court dismissed all claims except Millen's ADEA claim related to the Addison branch-manager position. Oxford moved for reconsideration, asserting that the district court mistakenly concluded that the Addison branch-manager position was open at the time Millen's

position was eliminated. On reconsideration, the district court granted Oxford summary judgment in full. Millen timely appealed.

## II.

We review the district court's summary judgment determination de novo. *Arban v. West Publ'g Corp.*, 345 F.3d 390, 400 (6th Cir. 2003). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### A. AGE DISCRIMINATION

#### 1.

Where an ADEA plaintiff relies on circumstantial evidence of discrimination, as Millen does here, she must establish the following prima facie elements: that she 1) was a member of a protected class; 2) suffered an adverse employment action; 3) was qualified for the position; and 4) was replaced by someone outside the protected class or was treated differently than similarly situated employees outside of the protected class. *Geiger v. Tower Automotive*, 579 F.3d 614, 622 (6th Cir. 2009). Under Michigan law, the first three prima facie elements of an age discrimination claim are the same as under the ADEA; the fourth element a plaintiff must establish is that she was discharged under circumstances that give rise to an inference of unlawful discrimination. *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 521 (Mich. 2001).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012); *Town v. Mich. Bell Tel. Co.*, 568 N.W.2d

64, 68 (Mich. 1997). Once the employer does so, the burden shifts back to the plaintiff to present evidence of pretext. *Blizzard*, 698 F.3d at 285; *Town*, 568 N.W.2d at 68. A plaintiff may establish pretext by showing that the employer's proffered reason 1) had no basis in fact, 2) did not actually motivate the adverse employment action, or 3) was insufficient to motivate the adverse employment action. *Blizzard*, 698 F.3d at 285; *Town*, 568 N.W.2d at 68.

**2.**

Millen argues that Oxford discriminated against her based on her age by repeatedly transferring her between branches. With one exception, Millen's transfers did not constitute adverse employment actions because she retained her salary, benefits, title, and duties. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."); *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004) (to constitute an adverse employment action under the ADEA, the action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities"); *Pena v. Ingham Cty. Road Comm'n*, 660 N.W.2d 351, 358 (Mich. Ct. App. 2003) (under Michigan law, an adverse employment action is an employment decision that is materially adverse in that it is more than a mere inconvenience or an alteration of job responsibilities and there must be some objective basis for demonstrating that the change is adverse because a plaintiff's subjective impressions as to the desirability of one position over another are not controlling) (internal quotations and citation omitted).

Millen testified, and Oxford did not dispute, that no other branch manager was made to transfer so frequently. However, Millen complained only about her final transfer to the Goodrich branch; she attached to her response to Oxford's motion for summary judgment an email dated

April 19, 2013, addressed to her then-supervisor, Cary Listerman,[1] and copied to then-CEO C.

James Bess, in which she requested that Oxford reconsider transferring her from the Lake Orion

branch to the Goodrich branch.[2]  Millen was not questioned at deposition whether or how Oxford

responded to her email and her affidavit does not speak to that.  Oxford provided evidence that it

---

[1] At the time Millen's branch-manager position was eliminated effective September 30, 2015, Listerman was the branch manager at Oxford's Davison branch.

[2] Millen's email stated:

I would respectfully request that you reconsider the proposed transfer for me from the Lake Orion office to the Goodrich office due to the following circumstances:

I have a disabled husband and daughter who could require my immediate attention at any given time.  By being transferred to the Goodrich Office it could cause a delayed response to provide them with assistance if a situation with their health should arise.  I will be 25 miles from home.  I am currently only 2 blocks away right now.  When I was at the Addison Branch I was only 8 miles away.

The increased miles per day would be a total of 50 miles round trip, times 6 days per week, times 52 weeks a year for a total of 2600 more miles per year in travel time and additional expense in gas for an educated guess of $1,500 more per year.  This will cause a financial burden on my budget.

I have been transferred three times between Branches in the last year and a half, this would make the fourth time without any resistance due to the requests made by upper management.  To the best of my knowledge I am the only employee who has been required to move so many times in such a short amount of time.

I have been a dedicated employee for 23 years with very few sick days taken and have always been cooperative with any requirements made of me.

I have continued to build sound relationships with many of our major depositors and our customers trust and rely on me.

I would once again ask you to please reconsider moving me from the Lake Orion Office to the Goodrich Office.

Thank you for taking this into consideration.

PID 243.

increased Millen's annual salary by approximately $2,000 effective July 21, 2013, several months after it transferred her to the Goodrich branch.

Millen testified that she trained Eric Rhein, age 43, for several weeks when Oxford hired him around 2011. Oxford placed Rhein in an assistant branch-manager position at the Clarkston branch, later promoted him to branch manager at the Goodrich branch, and, in April 2013, Oxford placed Rhein in Millen's position—Lake Orion branch-manager (the second largest branch)—and forced Millen to transfer to the Goodrich branch, the smallest branch. PID 168, 183-84. Millen testified that several years earlier, the Goodrich branch was open only several days a week; it was then closed altogether but reopened in December 2012.

**3.**

Millen thus established a prima facie case of age discrimination with regard to Oxford's placement of then-43-year-old Rhein[3] in the Lake Orion branch-manager position rather than leaving the far more experienced Millen in that position. Millen belonged to a protected class based on her age (at the time, 56). Millen was clearly qualified for the position given her 23 years at Oxford and seven years as a branch manager, including at the Lake Orion branch. Rhein, who was placed in the Lake Orion branch-manager position when he had been a branch manager only for several *months*, PID 169, in fact had been trained by Millen when Oxford hired him in 2011. Yet Oxford forced Millen, not Rhein, to transfer to the slowest branch, Goodrich. Although Rhein was in the same ADEA protected class as Millen, he was more than ten years younger than Millen.

---

[3] Oxford's reply to Millen's response to its motion for summary judgment states that Rhein was 45 years old when Oxford eliminated Millen's position (in late September or early October 2015). Oxford does not provide Rhein's birth date, but it is reasonable to assume that Rhein was 43 years old in April 2013, when Oxford forced Millen to transfer to the Goodrich branch.

*See Grosjean v. First Energy Corp.*, 349 F.3d 332, 336–39 (ten-year age difference alone is sufficient to show 4th prima facie element, collecting cases). Moreover, Rhein was still the Lake Orion branch manager when Oxford eliminated Millen's Goodrich branch-manager position effective September 30, 2015.[4] PID 245/Oxford Reply to Pl's Resp. to Mo. for Summ. J.

Under these unusual circumstances, we conclude that Millen presented sufficient evidence that she suffered an adverse employment action, that is, that her forced transfer to the slowest branch was "more disruptive than a mere inconvenience or an alteration of job responsibilities." *See Mitchell*, 389 F.3d at 182; *Pena*, 660 N.W.2d at 358.

Because Millen established a prima facie age-discrimination case with regard to Rhein, the burden shifted to Oxford to articulate a legitimate non-discriminatory reason for its disparate treatment of Millen. Oxford provided no such reason; it argued simply that none of Millen's transfers qualified as adverse employment actions. We thus reverse the district court's grant of summary judgment on Millen's age-discrimination claim relating to Rhein being assigned to her position at the Lake Orion branch and her forced transfer to the Goodrich branch in April 2013.

**B.**

The district court initially denied Oxford summary judgment on Millen's claim based on the Addison branch-manager position, which 42-year-old Jennifer Sherby assumed in May 2015 when Rosenstrater was promoted to Vice President of Retail Banking. The district court determined that Oxford failed to show a legitimate non-discriminatory reason for not considering Millen for that position. On Oxford's motion for reconsideration, however, the district court granted Oxford summary judgment on this remaining claim and dismissed Millen's case, agreeing

---

[4] And, when Oxford terminated Rhein's employment in mid-January 2016, Oxford replaced Rhein with 36-year-old Jason Howell. Oxford later terminated Howell's employment as well.

with Oxford that the Addison branch-manager position was not open when Oxford eliminated Millen's Goodrich branch-manager position effective September 30, 2015.

We do not agree with the district court's determination on reconsideration. When asked why Millen was not considered for the Addison branch-manager position when Sherby was promoted to that position in May 2015, Rosenstrater responded that Millen would have had to go through HR for that to occur; HR determines whether to post positions. Rosenstrater could not recall whether the Addison branch-manager position had been posted. However, from Rosenstrater's testimony that she and CEO Lamb formulated the strategic plan around May 2015, a reasonable jury could infer that Rosenstrater knew before Sherby, age 42, was given the Addison branch-manager position in early July 2015, that Millen's Goodrich branch-manager position would soon be eliminated. As the district court initially determined, Millen established a prima facie case regarding Sherby, and Oxford failed to articulate a legitimate, non-discriminatory reason for not considering Millen for the Addison branch-manager position. We thus reverse the district court's grant of summary judgment on Millen's age-discrimination claim relating to Sherby.

## C.

Millen also asserts that Oxford's termination of her employment constituted age discrimination because she was replaced by a much younger employee, 40-year-old Heidi Hauck. Millen testified, and Oxford does not dispute, that the separation and release agreement[5] she received in the mail from Oxford had no cover letter and stated no reason for the sudden termination of her employment. Millen did not inquire of Oxford why she was sent the separation

---

[5] The separation agreement and release was marked as exhibit 3 to Rosenstrater's deposition, PID 105 & 147, but it is not in the record. However, Rosenstrater was shown the separation agreement and release and questioned about it at her deposition. PID 147-48.

agreement or why her employment was suddenly terminated; she first learned the actual reason for her termination—that the Goodrich branch-manager position had been eliminated—when she received Oxford's response to her EEOC claim.

Oxford's articulated reason was that Millen's position was eliminated pursuant to its strategic plan formulated by Lamb and Rosenstrater around May 2015, before Millen took FMLA leave, under which the Goodrich branch would be closed because it was economically unsuccessful. However, the strategic plan nowhere states that the Goodrich branch-manager position would be eliminated long before the branch was to close. Rosenstrater testified that the elimination of that position flowed from the plan, and CEO Lamb's email to Rosenstrater in September 2015 gave her the go-ahead to eliminate the position "as soon as practicable." But the Goodrich branch did not close until February 2017, and Rosenstrater was not asked at deposition why that was the case or whether and when she and Lamb knew that it would take that long to close that branch. Given these circumstances, coupled with the fact that the separation agreement and release sent to Millen required that she release Oxford from any age discrimination or other employment claims, one could certainly view with skepticism Oxford's articulated reason for the elimination of Millen's position.

However, only Millen and Rosenstrater were deposed and Rosenstrater testified that Millen was not replaced; rather, Hauck absorbed some of Millen's duties and Rosenstrater assisted Hauck in running the Goodrich branch. Millen testified that she did not know whether Hauck replaced her. At argument, the only evidence Millen's counsel cited to support that Hauck replaced Millen was Rosenstrater's deposition testimony that after Oxford terminated Millen's employment, Rosenstrater was at the Goodrich branch about once a week. However, there is no evidence regarding how often she was at the branch when Millen was branch manager. Hauck was not

deposed and did not submit an affidavit below. Under these circumstances, we agree with the district court that Millen presented insufficient evidence from which a reasonable jury could conclude that Hauck was reassigned to perform Millen's duties and thus replaced Millen. *See Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990) ("[A] person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees . . . . A person is replaced only when another employee is . . . reassigned to perform the plaintiff's duties.").

**D.**

Millen also asserts that she was treated less favorably than the two other employees remaining at the Goodrich branch, who also were transferred to other branches when Oxford closed the Goodrich branch in February 2017. Br. 19. Oxford does not address this argument or deny that it transferred the remaining Goodrich branch employees in February 2017. But because neither held managerial positions, Millen failed to show that she was similarly situated to these employees. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 2001) (to show that an employee is similarly situated under the ADEA, a plaintiff is simply required to prove that all of the *relevant* aspects of her employment situation were nearly identical to those of the non-minority's employment situation); *Town v. Mich. Bell. Tel. Co.*, 568 N.W.2d 64, 70 (Mich. 1997) (same, under Michigan's Civil Rights Act). Millen's claim fails.

**E.**

For these reasons, we reverse the grant of summary judgment to Oxford on Millen's age discrimination claims based on Rhein assuming her position as Lake Orion branch manager and

Oxford transferring her to the Goodrich branch in April 2013, and Oxford not considering Millen

for the Addison branch-manager position in May 2015 and placing Sherby in that position.

### III.    HOSTILE WORK ENVIRONMENT BASED ON AGE or SEX

To establish a prima facie hostile-work-environment claim under the ADEA or Title VII,

Millen must show 1) she is 40 years or older or a member of a protected group, 2) she was subjected

to harassment, either through words or actions, 3) the harassment had the effect of unreasonably

interfering with her work performance and creating an objectively intimidating, hostile, or

offensive work environment, and 4) there exists some liability on the part of Oxford.  *See Hale v.*

*ABF Freight Sys.*, 503 F. App'x 323, 337 (6th Cir. 2012) (applying ADEA and citing *Crawford v.*

*Medina Gen. Hosp.*, 96 F.3d 830, 834–35 (6th Cir. 1996)); *Barrett v. Whirlpool Corp.*, 556 F.3d

502, 515 (6th Cir. 2009) (applying Title VII).

Under Michigan law, a plaintiff establishes a prima facie case of hostile-work-environment

based on age or sex harassment by showing that 1) she belonged to a protected group, 2) she was

subjected to communication or conduct on the basis of age or sex, 3) she was subjected to

unwelcome conduct or communication on the basis of age or sex, 4) the unwelcome conduct or

communication was intended to, or in fact did, interfere substantially with her employment or

created an intimidating, hostile, or offensive work environment, and 5) respondeat superior.

*Downey v. Charlevoix Cty. Bd. of Road Comm'rs*, 576 N.W.2d 712, 716 (Mich. Ct. App. 1998).

Millen presented no evidence that Oxford harassed her based on her age or sex.[6]  She

testified that no one at Oxford ever mentioned her age or sex or exhibited inappropriate conduct

---

[6] We do not address Millen's claim that Oxford either terminated or prodded to retire at least eleven employees between the ages of 50 and 60 since 2009 beyond noting that although  Millen named the eleven employees at deposition, and testified that upper management "bullied" those employees, she could not provide a single example.

toward her. We thus affirm the district court's dismissal of Millen's hostile-work-environment age and sex claims.

## IV. FMLA

Millen's amended complaint alleged that Oxford retaliated against her but did not specifically allege an interference claim or cite the FMLA's proscription against discrimination, 29 U.S.C. § 2615(a)(2), under which "interference" claims are brought. PID 30. Oxford's motion for summary judgment discussed both the retaliation and interference theories as did the district court. PID 92-95/Mo. for Summ. J.; PID 259-61/Dist. Ct. Op. 10/25/17.

This court recognizes two theories of recovery under the FMLA, the "entitlement" or "interference" theory arising from 29 U.S.C. § 2615(a)(1), and the "retaliation" or "discrimination" theory arising from 29 U.S.C. § 2615(a)(2). *Seeger v. Cincinnati Bell Tel. Co.,* LLC, 681 F.3d 274, 282 (6th Cir. 2012). Both types of FMLA claims are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Donald v. Sybra, Inc.*, 667 F.3d 757, 761–62 (6th Cir. 2012).

## A. RETALIATION

The FMLA "affords employees protection in the event they suffer retaliation or discrimination for exercising their rights under the FMLA. Specifically, '[a]n employer is prohibited from discriminating against employees . . . who have used FMLA leave.'" *Arban*, 345 F.3d at 403 (quoting 29 C.F.R. § 825.220(c)). "This prohibition includes retaliatory discharge for taking leave." *Id*.

To establish a prima facie case of FMLA retaliation, Millen must show: (1) she was engaged in an activity protected by the FMLA; (2) Oxford knew that she was exercising her rights

under the FMLA; (3) after learning of Millen's exercise of FMLA rights, Oxford took an employment action adverse to Millen; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *See Donald*, 667 F.3d at 761.

Oxford disputed below only the causal-connection prima facie element. We agree with the district court that Millen satisfied the causal-connection prima facie element by virtue of the temporal proximity between Millen's FMLA leave, which began in July 2015, and when she received notice of her termination in October 2015, PID 260. *See Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283–84 (6th Cir. 2012) (causal connection between protected activity and adverse employment action can be established on the basis of close temporal proximity).

However, Millen argued below only that she established a prima facie case and did not address pretext in response to Oxford's proffered non-discriminatory reason for eliminating her position. Millen first addressed pretext in relation to her FMLA claim in her appellate Reply Brief, thus forfeiting any argument regarding pretext. *See, e.g., Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006) ("failure to present an issue to the district court forfeits the right to have the argument addressed on appeal."). Accordingly, we affirm the district court's determination that Millen offered no evidence of pretext and the dismissal of Millen's FMLA retaliation claim on that basis.

### B. INTERFERENCE

"The interference theory has its roots in the FMLA's creation of substantive rights; '[i]f an employer interferes with the FMLA-created right to medical leave or to reinstatement following

the leave, a violation has occurred,' regardless of the intent of the employer." *Id.* at 282 (quoting *Arban v. West Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003)).

To establish a prima facie case of FMLA interference, Millen had to show 1) she was an eligible employee; (2) Oxford was an employer as defined under the FMLA; (3) Millen was entitled to leave under the FMLA; (4) Millen gave Oxford notice of her intention to take leave; and (5) Oxford denied Millen FMLA benefits to which she was entitled. *Donald*, 667 F.3d at 761. Millen was already on FMLA leave when her position was eliminated, so the benefit at issue is her right to reinstatement.

An employee returning from FMLA leave is "entitled, on return from such leave–(A) to be restored to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614 (a)(1)(A)-(B). However, the employee is not entitled to a position other than one to which the employee would have been entitled had the employee not taken leave. 29 U.S.C. § 2614(a)(3)(B). Similarly, 29 C.F.R. § 825.216, titled "Limitations on an employee's right to reinstatement," provides in pertinent part:

> (a) An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period . . . .

29 C.F.R. § 825.216. "An employer need not reinstate an employee who would have lost his job even if he had not taken FMLA leave." *Pharakhone v. Nissan N. Am., Inc.*, 324 F.3d 405, 407 (6th Cir. 2003); *see also* 1 Emp. Discrim. Coord. Analysis of Federal Law § 32.56 ("[A]n employee's right to reinstatement is not absolute; an employee is not entitled to her prior position if she would have been demoted or terminated regardless of whether she took FMLA leave.")

(citing *Simpson v. Office of Chief Judge of Circuit Court of Will Cty.*, 559 F.3d 706 (7th Cir. 2009);

*Goelzer v. Sheboygan Cty., Wis.*, 604 F.3d 987 (7th Cir. 2010)).

Oxford disputed only the fifth prima facie element, asserting that Millen was not entitled to restoration to her branch-manager position because her position would have been eliminated regardless whether she had taken FMLA leave. The district court granted summary judgment on this basis. Because Millen has not addressed the district court's ruling on appeal, her claim fails.

**V.**

We AFFIRM the district court's grant of summary judgment in Oxford's favor on Millen's age and sex harassment claims and her FMLA claims. We REVERSE the grant of summary judgment on her age discrimination claims based on her transfer to the Goodrich branch in April 2013 and Oxford's failure to consider her for the Addison branch-manager position in May 2015, and REMAND for proceedings consistent with this opinion.